CITY OF PROVIDENCE *et al. vs.* BENJAMIN P. MOULTON *et als.*

APRIL 25, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This petition in equity in the nature of *quo warranto* is brought in this court under authority of Chapter 379, G. L. 1923, to determine the title of the individual petitioners to certain offices claimed by them.

Petitioners attack the validity of Chapter 1710, P. L. 1931, which took effect April 10, 1931. The act is entitled: "An Act Creating a Board of Public Safety for the City of Providence and Making an Appropriation Therefor." The act provides that there shall be a board of public safety for said city which shall consist of three of its electors. The governor is required to appoint the members of said board with the advice and consent of the senate. Three of the respondents are the duly appointed and qualified members of said board and the fourth respondent is the public service engineer appointed by said board.

The act vests in said board full and complete control and management of the police, the fire and the public service engineer departments of said city and all powers vested in the mayor, board of aldermen, the city council, the board of police commissioners, the board of fire commissioners, the chief of police, the chief of the fire department and the public service engineer relative to said departments, and the control of all property used by the police and the fire departments.

Upon the qualification of the members of the board and the public service engineer they proceeded to execute the duties of their respective offices and thereby excluded the individual petitioners from the offices formerly held by them as police commissioner, fire commissioner and public service engineer.

Petitioners being thus aggrieved brought this petition praying that, for the reasons therein stated, the act creating said board of public safety be declared unconstitutional and void; that the appointment of the respondents be declared invalid, and that petitioners be adjudged entitled to the offices to which they were elected and from which they had been ousted by the respondents.

Petitioners allege several reasons why they claim the act creating said board of public safety is unconstitutional and void. These reasons are substantially the same as those alleged in the cases of the *City of Newport* v. *Horton,* 22

R. I. 196 and *Horton v. City of Newport,* 27 R. I. 283. In these cases this court held that the act providing for the establishment of a State-appointed board of police commissioners for said city was not unconstitutional. The general form and phraseology of that act has been closely followed in the act now before the court. The present petition could be properly decided under the law as stated in the *Horton* cases but as the control of the fire department and the public service engineer was not involved in the *Horton* cases we will again consider the questions presented.

Section 19 of the act appropriates $35,000 of the money in the State's treasury for the purpose of paying the salaries and legal expenses of the board during the year ending June 30, 1932. Petitioners claim that this appropriation is for a local purpose. They allege that the act was not legally passed because it did not receive the assent of two-thirds of the members elected to each branch of the general assembly which is necessary in order to appropriate money for a local purpose as required by Sec. 14, Art. IV of the constitution. Petitioners contend that because this appropriation was not lawfully made the whole act must be declared unconstitutional. The contention cannot be sustained. The question of the validity of this section does not affect the right of the petitioners to the offices claimed by them. This is an independent appropriation. This section could be stricken from the act and the remaining sections would be complete in themselves and capable of being executed in accordance with the apparent legislative intent. In an opinion of this court to the House of Representatives, *In the Matter of the Appropriation Bill,* 45 R. I. 289, this court said: "In accordance with well settled principles of constitutional law and statutory construction early adopted and consistently followed in this state, we would not declare the whole act invalid but would strike out the independent appropriations for private purposes as not passed in accordance with constitutional requirement, and would approve the rest of the act as valid and constitutional." A

statute which is unconstitutional or void in part may still be valid as to the residue, unless the parts are so intimately connected that it cannot be supposed that one part of the statute was intended to be enforced independently of the other. *State* v. *Amery,* 12 R. I. 64; *State* v. *Copeland,* 3 R. I. 33; *State* v. *Snow,* 3 R. I. 64.

Two other reasons alleged by petitioners why said act is unconstitutional are (1) Section 5 authorizes said board to summon witnesses, administer oaths and punish any contempt of its authority. Petitioners claim this section confers judicial powers upon the board in violation of Article III of the constitution which distributes the powers of government into three departments, legislative, executive and judicial, and of Article X, Section 1 which states that the judicial power shall be vested in one supreme court and such inferior courts as the general assembly may from time to time ordain and establish. (2) Sections 6, 7 and 9 confer legislative powers upon subordinate executive officers in violation of said article III.

We cannot properly consider these constitutional questions because petitioners are not adversely affected by them. The question presented by the petitioners is in regard to their right to hold the offices from which they have been ousted by respondents. In *Newport* v. *Horton, supra,* this court declined to consider similar reasons alleged for holding the act unconstitutional because they were not involved in the single question presented to the court. No principle of law is more firmly established than the one that he who would successfully assail a law as unconstitutional must show that the feature of the act complained of operates to deprive him of some constitutional right. *Aikins* v. *Kingsbury,* 247 U. S. 484; *Sackett* v. *Paine,* 46 R. I. 439; *Joslin Mfg. Co.* v. *Clarke, C. T.,* 41 R. I. 350. 12 C. J. 760.

When the board attempts to punish some person for contempt or prosecute a person for violation of its rules and orders its authority in these particulars may properly be questioned by the person affected.

Petitioners also allege that said act and particularly Sections 6, 7, 8, 9 and 10 thereof are unconstitutional because they infringe the right of local self-government preserved to the city by Article I, Sec 23 of the constitution and also because they deprive said city and the people thereof of the control and management of their private proprietary property, undertakings and affairs.

Section 23 cited by petitioners as the foundation for their claims reads as follows: "The enumeration of the foregoing rights shall not be construed to impair or deny others retained by the people." The "foregoing rights" referred to in the preceding sections are those usually found in a "bill of rights."

The power of the general assembly to enact a law placing the control and management of the police department of a city in a commission to be appointed by the governor was upheld by this court in the *Horton* cases *supra*. It was then claimed, as now, that the act was unconstitutional because it infringed the right of local self-government. The court considered the claims at length and held that the right of the city to the sole control of its police force had not been so reserved as to bring it within Art. I, Sec. 23 or Art. IV, sec. 10 of the constitution and that the act was not unconstitutional on the ground of interference with the right of the city to local self-government so far as the appointment of a chief of police by the State-appointed commissioners was concerned. In its opinion, 22 R. I. at 204, the court said: "Towns and cities are recognized in the constitution, and doubtless they have rights which cannot be infringed. What the full limit and scope of those rights may be cannot be determined in the decision of this case. The court cannot properly go beyond the question before it. We assume that the towns and cities in this State have the same rights which towns and cities have in other States under the prevalent form of State government. Our inquiry, therefore, is whether the establishment of police au-

thorities by the State infringes the rights of self-government."

Counsel for petitioners argue that this language shows that towns and cities have rights of local government which the general assembly must respect and claim that the act creating the board of public safety is far more drastic and inclusive than the act creating the Newport police commission and infringes the right of local government reserved to the cities and especially that the general assembly had no power to appoint a commission to exercise control of the fire department or of the work done by the public service engineer.

In considering these claims we start with the premise that legislatures are the creatures of the constitution. They owe their existence to it and derive their powers from it. It is their commission. Therefore all their acts must be conformable to it or else they will be void. *Vanhorne's Lessee* v. *Dorrance*, 2 Dal. 304.

In order to decide the questions presented it is necessary to ascertain what powers are given to the general assembly by the constitution. Article III states that: "The powers of the government shall be distributed into three departments: the legislative, executive and judicial." Article IV relates to the legislative power. Section 1 is as follows: "This constitution shall be the supreme law of the state, and any law inconsistent therewith shall be void. The general assembly shall pass all laws necessary to carry this constitution into effect." Section 10 is: "The general assembly shall continue to exercise the powers they have heretofore exercised, unless prohibited in this constitution."

The constitution defines the powers given to the executive and the judicial departments of the government. All other powers of government are given to the legislative department, unless prohibited in the constitution. There is no clause in the constitution prohibiting the general assembly from interfering with the local government of any city or town. Petitioners claim this power of local government

has been reserved to the cities and towns. As the general assembly is expressly authorized by said section 10 to "continue to exercise the powers they have heretofore exercised" it is necessary to ascertain if the general assembly was prohibited from interfering with the local government of the cities and towns prior to the adoption of the constitution and what powers were exercised by the general assembly before that time.

Until the organization of our State government May 3, 1843, under our present constitution, adopted in 1842, the fundamental law of the State was the charter granted by King Charles II in 1663 and the usage of the legislature under it. The general assembly exercised judicial powers as well as legislative powers. Eminent jurists and lawyers have said that the powers of the general assembly under the charter were limited only by the constitution of the United States. Soon after the adoption of the constitution the question arose in the case of *Taylor & Co.* v. *Place,* 4 R. I. 324, whether the general assembly could continue to exercise judicial power. In a notable opinion by Ames, C. J., this court held that, the constitution prohibited the exercise of the judicial power by the general assembly. The learned Chief Justice said: "If the general assembly may, constitutionally, exercise judicial functions, then, uniting in substance, all the powers of government, it is, except so far as its power is bounded by the constitution of the United States, constitutionally omnipotent and irresponsible." In discussing the exercise of judicial power by the general assembly prior to the adoption of the constitution, the Chief Justice said: "In the case of *Wilkinson et al.* v. *Laland et al.,* 2 Peters, 631, 632, heard before the supreme court of the United States, in 1829, the able and experienced counsel (Whipple) for the plaintiffs in error contended, that both before and since the adoption of the constitution of the United States, the general assembly of Rhode Island had always exercised supreme legislative, executive and judicial power . . . ." In the *Wilkinson* case,

*supra,* the question presented was as to the power of the legislature in 1792 to pass an act confirming a deed made by an executor. Mr. Whipple said: "No other limit to the power of the legislature is known, other than that which is marked out by the constitution of the United States." He argued that the papers in the case showed that the legislature had always exercised supreme legislative, executive and judicial powers. The validity of the act was upheld in an opinion written by Mr. Justice Story. In his opinion he said: "Until the revolution in 1776, it (Rhode Island) was governed by the charter granted by Charles II in the fifteenth year of his reign. . . . By this charter the power to make laws is granted to the general assembly, in the most ample manner, so as such laws be not contrary and repugnant unto, but, as near as may be, agreeable to the laws . . . of England, considering the nature and constitution of the place and people there."

In Burke's Report to the House of Representatives, 1844, on the alleged interference of President Tyler in the affairs of Rhode Island, it is stated that "the grievance complained of, as much as any other, was that the government of the state was based on the charter of Charles II, which invested the legislature with unlimited power, making it despotic and supreme." Also that "the general assembly considered that the charter conferred upon them a dominion entirely discretionary"; also that "one of the most prominent members of the House of Representatives, while standing in his place, declared that 'the legislature was omnipotent' " and that "the sole power centers in the general assembly and that power is independent, and politically omnipotent." pp. 13, 158, 160, 416.

The above references show that under the charter the general assembly had unlimited power and authority restricted only by the constitution of the United States. Cities and towns had no powers of local self-government under the charter, and none were reserved to them by the constitution adopted in 1842. This principle is sustained

in the *Horton* cases, *supra*. In the first case—22 R. I. 196 at 203—the court considered at length the claim "that the constitution of the state must be interpreted according to an unwritten theory of local self-government which so entered into its provisions as to make it controlling in construing those provisions" and held that the claim could not be sustained. In the second case—27 R. I. 283 at 293—the court cited many cases showing "that a municipal charter is subject at all times to such change, modification or repeal as the legislature shall see fit to impose."

In *Payne & Butler* v. *Providence Gas Co.*, 31 R. I. 295 at 315, the court said: "After the adoption of the State constitution the legislature had the powers of crown and parliament aforesaid, less the power taken therefrom for the federal government and also minus whatever powers were taken from it by the constitution of the State." In *re The Warwick Financial Council*, 39 R. I. 1 at 6, this court said: "From very early times the course of legislation by the General Assembly has furnished a legislative construction that the towns derived all their powers from the legislative enactments passed from time to time." In *Miller* v. *Clark, C. T.*, 47 R. I. 13 at 17, this court said: "Save as restrained by the constitution, the general assembly possesses all of the legislative governmental powers of the State." In the *Matter of the Metropolitan Park Loan*, 34 R. I. 191 at 202, objection was made to the proposed legislation as interfering with local government. The court said: "The sufficient answer to this objection is that the Constitution . . . contains no reference to local government and nowhere attempts to restrain the power of the legislature over the various cities and towns within it." These authorities prove that cities and towns have no inherent right of local government.

The general rule in the United States is the same as in this State. McQuillin Municipal Corp., 2nd ed., Vol. 1, p. 265, says: "Contrary to general opinion and to practice largely, it seems that the doctrine of the existence of an in-

herent right of local self-government or home rule does not at present exist, and according to some authorities never did exist in this country. . . . The generally accepted theory, nevertheless, in our system is that the state is the creator and the city or town the creature. Accordingly unlimited legislative control is generally affirmed, except as restricted by constitution." Dillon on Municipal Corp., 5th ed., Vol. 1, p. 154, says: "It must now be conceded that the great weight of authority denies *in toto* the existence, in the absence of special constitutional provisions, of any inherent right of local self-government which is beyond legislative control." In Connecticut it was held that the town and city of Waterbury had no inherent right of local self-government not subject to the legislative will, unless given such right by state or federal constitution. *City of Waterbury* v. *Macken et al.*, 124 Atl. 5. In Massachusetts the court said in *Commonwealth* v. *Plaisted*, 148 Mass. 375, that: "We cannot declare an act of the legislature invalid because it abridges the exercise of the privilege of local self-government in a particular in regard to which such privilege is not guaranteed by any provision of the constitution." Recently the same court upheld the validity of the act constituting a state-appointed board of finance for the city of Fall River. The court said there was no tenable ground on which to distinguish the board of finance and its establishment and powers from statutes vesting control of the police force of a city in appointees of the governor. *Broadhurst* v. *City of Fall River*, 179 N. E. 586. In Tennessee it has been held that the operation of a fire department is a "governmental function" and that the legislature could directly, and without the intervention of the city of Memphis, employ its entire police force or its entire fire department at such salaries as it deemed wise. *Smiddy* v. *City of Memphis*, 140 Tenn. 97. In Nebraska it has been held that the legislature could confer upon the governor the power to appoint members of the board of fire and police commissioners of cities. *Redell* v. *Moores et al.*, 63 Neb.

219. Some other states in which it has been held that the right of local self-government does not exist are *Booten* v. *Pinson,* 77 W. Va. 412; *Sweeten* v. *State,* 122 Md. 634; *State ex. rel. Clausen* v. *Burr,* 65 Wash., 524; *Londoner* v. *City of Denver,* 52 Colo. 15; *Mayor of Americus* v. *Perry,* 114 Ga. 871.

Petitioners cite a few cases in support of their claim of local self-government. On account of the absence of any restriction upon the powers of the general assembly in our constitution, these cases are not in point. The leading case cited is that of *State* v. *Denny,* 118 Ind. 449. Mitchell, J., filed a dissenting opinion in which he said that it was his deliberate judgment that "without in effect interpolating a provision into the constitution no judicial authority could be found anywhere to support a conclusion adverse to the validity of the statutes in question." This case was cited and considered by the court in *Horton* v. *Newport,* 27 R. I. 283.

A city is a municipal corporation created by the legislature. The United States Supreme Court said: "In the absence of state constitutional provisions safe-guarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the State . . . and the State may withhold, grant or withdraw powers and privileges as it sees fit." *City of Trenton* v. *New Jersey,* 262 U. S. 182; *Atkin* v. *Kansas,* 191 U. S. 207 at 221; *Barnes* v. *District of Columbia,* 91 U. S. 540 at 544; McQuillin Municipal Corp., 2nd Ed., Vol. 1, p. 504.

Applying these principles of law to the case stated by petitioners, we find that the general assembly passed legislation authorizing the appointment of police commissioners by the mayor with the advice and consent of the board of aldermen and the election of fire commissioners and the public service engineer by the city council in joint convention. The power of the general assembly to pass such legislation can not be questioned. In the absence of any constitutional provision to the contrary, the general assembly

may withdraw the powers and privileges granted to the city. There is no limitation in the constitution preventing the exercise of such power of withdrawal by the general assembly. It did withdraw these privileges when it passed the act creating the State-appointed board of public safety.

Petitioners also claim that said act is unconstitutional in that it violates Article XIV, Section 1 of the amendments to the constitution of the United States. This claim is without merit as it has been held that the equal protection clause of this amendment cannot be invoked by a city against its state. See *City of Trenton* v. *New Jersey,* 262 U. S. 182; *City of Newark* v. *New Jersey,* 262 U. S. 192.

For the reasons given our conclusion is that said chapter 1710 creating a board of public safety for the city of Providence does not violate Section 23 of Article I of the constitution.

The petition is denied and dismissed.

*John C. Mahoney, City Solicitor, McGovern & Slattery, James A. Higgins,* for petitioners.

*Benjamin M. McLyman, Attorney General, Sigmund W. Fischer, Asst. Atty. Gen., Clifton I. Munroe,* for respondents.

*Edwards & Angell, Hinckley, Allen, Tillinghast, Phillips & Wheeler,* special counsel.