280 A.2d 312.
CHARIHO REGIONAL HIGH SCHOOL DISTRICT *vs.* TOWN TREASURER OF THE TOWN OF HOPKINTON.

AUGUST 2, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. These are appeals from the entry of two judgments in the Superior Court in a civil action the background of which requires a somewhat extended delineation.

In furtherance of its constitutional duty to promote public schools, the General Assembly enacted P. L. 1958, chap. 55, approved May 14, 1958. Section 1 of said Act provides as follows:

"There shall be held in each of the towns of Charlestown, Richmond and Hopkinton, within seventy (70) days after the adoption of this act, a special election at which the electors of said towns qualified to vote upon a proposition to impose a tax or for the expenditure of money shall be qualified to vote and called upon to vote upon a question submitted in substantially the following form: 'Shall an act passed at the January, 1958, session of the general assembly, entitled 'An act authorizing the towns of Charlestown and Richmond together, or together with the town of Hopkinton, to join in a regional high school district, incorporating said district, and providing for the issuance of bonds, construction and operation of a regional high school for the joint use of the participating towns, within said regional high school district established by this act' be approved.' "

The section further provided for the time and manner of giving notice and for the holding of such special election.

Section 2 of said Act provides:

"The towns of Charlestown and Richmond, upon the approval of the provisions of this act at special election held in accordance with section 1 of this act, and the town of Hopkinton upon the approval of said towns of Charlestown and Richmond and upon the approval of the voters of said town of Hopkinton as set forth in section 1 of this act, jointly together are hereby incorporated into a regional high school district as a body corporate and politic for, but not restricted to, the following purposes, viz:—

(1) To adopt a name and to adopt and use a corporate seal.

(2) To sue and be sued in its corporate name to the same extent as incorporated towns of this state.

(3) To acquire, take over, operate and control a regional high school, including lands, buildings, equipment, furnishings and supplies for the same, for the joint and common use of the member towns incorporated into the said regional high school district, for the education of pupils attending grades seven (7) to twelve (12) inclusive, *and with all the powers and duties pertaining to education and schools conferred by law in this state upon towns generally,* including the power of eminent domain to take lands for school site purposes, provided, that the amount of the same at any one taking may be more than five (5) but not more than thirty (30) acres." (Emphasis ours.)

Meeting in accordance with the provisions of said secs. 1 and 2, a majority of the qualified property voters of all three towns, voted to adopt the provisions of the act and thereby incorporated the Chariho Regional District, hereinafter called Chariho. As a consequence, plant facilities were constructed and furnished, and with all three towns participating, Chariho commenced operations in September 1963.

Section 10 of said Act provides for a regional high school committee consisting of three members from each member town, each of whom shall be a duly elected or appointed member of the school committee of their respective towns. Since all three towns in question voted to adopt the provisions of said chap. 55, the regional high school committee consists of nine members.

Section 9, subsection (1) of said chap. 55 provides, *inter alia,* for an annual regional high school district meeting at which all property-qualified voters of the member towns are entitled to participate. The annual meeting, thus provided for, is held on the first Tuesday of February in each year.

Subsection (2) provides:

"The regional high school district meeting shall de-

termine the annual regional high school budget as to over-all amount."

Subsection (4) provides:

"A majority vote of all the voters present at the regional high school district meeting and qualified to vote shall be required for the adoption of the annual regional high school budget."

Subsection (6) provides:

"No action shall be taken with respect to the purchase of land, the construction of buildings, and the extension of the scope of functions of the regional high school district except upon a majority vote of voters present and qualified to vote at a regional high school district meeting."

Finally, subsection (8) of section 9 provides in pertinent part:

"All regional high school district meetings shall be called and warned by written notices signed by the clerk and the chairman of the regional high school district committee notifying the qualified electors of said district of the time and place of said meeting and the business proposed to be transacted thereat * * *."

Pursuant to this last quoted provision, call and warning were given for an annual district meeting to be held on February 7, 1967. The call included notice that the district committee had voted to recommend establishment of a vocational training program.

For lack of quorum on February 7, 1967, the meeting thus called was adjourned to and held on February 27, 1967. On this latter date a majority of the voters present approved the proposition to include a vocational training program. They also voted to approve an operating budget of $443,812 which included $29,395 for the vocational training school. They also approved a debt-service budget of $62,460.

The amount of the budgets thus approved was proportionately chargeable to the three towns on a pupil enroll-

ment formula set forth in sec. 15, subsections 6 and 7 of the enabling act. Further, they voted to approve a debt-service budget of $62,460 chargeable to the three towns on a proportionate formula set forth in subsection 8 of said sec. 15.

Pursuant to the foregoing, Hopkinton was assessed $226,-477.26 as its share of the operating budget for the fiscal year commencing July 1, 1967. Of this amount $15,000 was for the vocational training program. It was also assessed $6,-678.53 as its share of the debt service for the same period.

Continuing, sec. 15, subsection 9 of the enabling act provides that each town shall pay one-fourth of its apportioned share of both operating and debt-service budgets on or before July 1 of the year in which said budgets are adopted. Consequently, Hopkinton's share of the operating budget being $226,477.26 and $26,714.12 of the debt-service budget, it was required to pay to Chariho's treasurer $56,619.33 for operating expenses and $6,678.53 for debt services by July 1, 1967.

It is at this juncture that attention must be given to the inclusion of a vocational training program approved at February 27, 1967 district meeting, the cost of which was included in the operating budget. The vocational training resolution, as approved by a majority of voters at Chariho's financial meeting on February 27, 1967, provided for the acceptance of students residing in towns of Washington County other than the three towns comprising Chariho. Such students would be admitted on payment by the towns in which they resided of each such student's proportionate share of the total student attendance.

The property voters of Hopkinton objected to the vocational training program and at Hopkinton's annual financial town meeting, adjourned May 11, 1967, voted not to appropriate funds for such program. As a consequence, Hopkinton's town treasurer on June 27, 1967, forwarded to

Chariho's treasurer, Hopkinton's check in the amount of $59,547.86. In an accompanying letter Hopkinton's treasurer explained that the check represented the first quarter payment of $6,678.53 for debt service and $52,869.33 operating expenses which was $3,750 less than Hopkinton's share of the operating budget payable by July 1, 1967.

Thereafter, on March 15, 1968, Chariho commenced this civil action to collect the $3,750. Hopkinton answering, challenged Chariho's right to sue on constitutional grounds. Further answering, it denied Chariho's right to recover the $3,750 in any event for the reasons that the regional district school committee and taxpayers were without lawful warrant to operate a vocational training school, and were particularly unauthorized to accept students who were not residents of the member towns.

In addition to the averments in its answer, Hopkinton filed a counterclaim alleging, in essence, payments made by it to Chariho since 1960, not validly due. It prayed for an accounting of the years in question.

Chariho, in answer to Hopkinton's counterclaim, denied the merits thereof, and further answering invoked the doctrine of laches.

In a pretrial order, the Superior Court justice, pursuant to Super. R. Civ. P. 21, added as parties the then Department of Education and the towns of Richmond and Charlestown. In the judgment of said justice all were necessary parties because of the financial implications raised by Hopkinton's challenge to the constitutionality of P. L. 1958, chap. 55,[1] and counsel for each party so added entered their appearances.

Further, purporting to act on the authority of Super. R.

---

[1]The interest of Charlestown and Richmond is readily apparent. However, it is clear from the legislation creating Chariho that it would participate in the state program of aid to education and the record shows that it did so participate.

Civ. P. 42(b), the Superior Court justice in a pretrial conference, advised all parties that he was dividing the litigation into three separate issues. These were first, resolution of the diverse questions relating to the validity of the enabling act raised in Hopkinton's answer; secondly, trial on the merits of Chariho's claim if the defenses raised in Hopkinton's answer were found to lack merit; and lastly, consideration of Hopkinton's counterclaim. Counsel for Hopkinton objected to this procedure, but these objections other than otherwise herein discussed require no consideration.

After the filing of briefs and hearing of oral arguments on the first issue to be decided, the Superior Court justice found Hopkinton's claim that P. L. 1958, chap. 55, was unconstitutional to be without merit. Similarly, he found no merit in Hopkinton's further contention that, even if Chariho were validly constituted, the establishment of a vocational training department by the Chariho District Committee and the taxpayers was ultra vires of the jurisdiction conferred by said chap. 55.

Accordingly, trial was held on the merits of Chariho's claim that Hopkinton owed $3,750 in connection with the operation of a vocational training department for the first quarter of the year commencing July 1, 1967. He found, by a method of computation not in issue here, that Hopkinton's proper share was $3,013.09 for the quarter in question, $736.91 less than that which Chariho claimed. He ordered judgment to enter for Chariho in said sum of $3,013.09 with interest and costs, but ordered execution suspended 30 days. So doing he stated " * * * to permit the defendant to file notice of appeal to the Supreme Court, and also to enable this Court now to consider the issues raised by the defendant in its counterclaim." Hopkinton vigorously objected to entry of judgment for Chariho before disposition of its counterclaim, but, out of an abundance

of caution, claimed an appeal from the judgment on February 21, 1969, 18 days after its entry.[2]

Meanwhile, on February 6, 1969, the trial justice on consideration of Hopkinton's counterclaim referred that matter to a special master under Super. R. Civ. P. 53(b)(2). He noted that in the trial on the merits of Chariho's claim, it was established that the State Bureau of Audits had annually examined and periodically reported upon the financial record of the Chariho Regional High School District.

Consequently, he appointed the director of said Bureau as special master, assigning to said special master all the powers prescribed in Rule 53(c). In significant particular it provides:

> "Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books,

---

[2]It would appear that the trial justice intended to invoke the provisions of Super. R. Civ. P. 62(e) which provides as follows:

"(e) Stay of Judgment as to Multiple Claims or Multiple Parties. When a court has ordered a final judgment under the conditions stated in Rule 54(b) the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered." ,

However, this rule is applicable only when, having rendered judgment on fewer than all of the claims or having adjudicated the interests of less than all of the parties, the trial justice, under said Rule 54(b), has made an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

Here, the trial justice, having found for Chariho on its claim against Hopkinton, before adjudicating Hopkinton's counterclaim, made no such determination and direction, as is called for by said Rule 54(b). Consequently, the judgment entered for Chariho was not a final judgment on which an immediate appeal lies. *Calore Rigging Corp.* v. *Sterling Engineering & Constr. Co.*, 105 R. I. 150, 250 A.2d 365.

papers, vouchers, documents, and writings applicable thereto."

In his order appointing the special master, which order was filed February 6, 1969, the trial justice directed Hopkinton as plaintiff in its counterclaim to furnish said master with a bill of particulars setting out by years and nature of expenditures those items Hopkinton now claimed to have been unlawful.

On April 9, 1969, the special master filed a report, the substance of which complained of a lack of cooperation by Hopkinton. This report set forth a travel of the special master's efforts to obtain from Hopkinton detailed information designed to be supplied by what the trial justice had referred to as a bill of particulars. The report, read in its entirety, is open to a clear inference that Hopkinton, for reasons best known to it, intended to ignore the special master's special request. As a consequence of this report, the trial justice, acting pursuant to Super. R. Civ. P. 37(b)(2)(iii), ordered the counterclaim dismissed and judgment entered accordingly. The judgment, having been entered without prior notice to Hopkinton, the latter seasonably moved to vacate the judgment on the grounds that one, Hopkinton had substantially complied with the provisions of the order appointing a special master; and two, that the order of dismissal was invalid in that Hopkinton was denied a hearing on the special master's report under Super. R. Civ. P. Rule 53(e)(2).

In a rescript dated May 9, 1969, the trial justice refers to a hearing on said motion held May 6, 1969. However, no transcript of such a hearing is in the record and in his rescript the trial justice, without referring to either of the grounds on which the motion to vacate was based simply states that the motion "be and hereby is denied and dismissed." From the judgment previously entered, Hopkinton claimed an appeal to this court.

As heretofore remarked (see note 2) Hopkinton's appeal from the judgment entered on Chariho's claim was prematurely taken, but with the entry of judgment for Chariho on Hopkinton's counterclaim, all the claims and the interests of all parties were fully adjudicated, so that both appeals are properly before us.

We turn first, then, to a consideration of Hopkinton's appeal from the judgment entered for Chariho in the sum of $3,013.09. In support thereof, Hopkinton advances several contentions, the first of which is that Chariho is, in effect, *non sui juris* and its claim, therefore, should have been dismissed.

This contention is predicated on the proposition that P. L. 1958, chap. 55, pursuant to which the district was created, constitutes a denial of equal protection under article XIV of amendments to the Constitution of the United States, and article XXIX of amendments to the constitution of this state.

The argument that the enabling act is thus unconstitutional is predicated on several facts. These are, principally, that representation on the district school committee is equally divided among the three towns composing the district, although the population of Hopkinton is equal to that of Richmond and Charlestown combined, and that the Legislature provided for creation of the district by limiting the voting participation by the inhabitants of the three committees to persons qualified to vote on questions of the imposition of a tax or the expenditure of money. In support of these arguments, Hopkinton cites the cases of *Kramer* v. *Union Free School District*, 395 U. S. 621, 89 S.Ct. 1886, 23 L. Ed.2d 583; *Harper* v. *Virginia State Board of Elections*, 383 U. S. 663, 86 S.Ct. 1079, 16 L. Ed.2d 169; *In re School Committee*, 19 R. I. 279, 33 A. 369, among others.

The trial justice disposed of the constitutionally-based contentions by holding, in essence, that the Legislature could have created Chariho without submitting the question to the voters of the three towns involved; that Hopkinton was guilty of laches in not challenging the legislation when first enacted; and that Chariho was at least a de facto corporation. It was the substance of the trial justice's decision in this regard that to hold otherwise would result in chaos.

When the case came on for oral argument in this court, we were of the opinion that, prescinding from the soundness of the trial justice's reasoning, Hopkinton, being a creature of the Legislature, was without standing to raise the constitutional issue on which it sought to have Chariho's claim dismissed. We were inclined to this opinion by reason of the holding of this court in *City of Providence* v. *Moulton,* 52 R. I. 236, 160 A. 75, and the state and federal authorities on which *Moulton* was decided.

We were not disposed, however, to apply *Moulton* without giving Hopkinton an opportunity to be heard on its application, and for that limited purpose, deferred all other consideration pending the briefing and oral argument of the issue on standing. *Chariho Regional High School District* v. *Town Treasurer,* 107 R. I. 699, 270 A.2d 914.

When the case was thus reargued, Hopkinton was unable to refer our attention to any case which departed from the long established and universal principle that a municipality has no inherent right to self-government nor can it invoke the equal protection clause of the XIV amendment.

Hopkinton's contention that Chariho's claim should have been dismissed on constitutional grounds is, therefore, without merit.

Even so, Hopkinton further contends that the claim was not collectible for the reason that Chariho lacked authority to provide for a vocational training program which would

be available to students residing in towns other than those of which Chariho was composed. This contention flows from Hopkinton's interpretation of the force and meaning of chap. 55, sec. 17. The inclusion of this provision, Hopkinton argues, demonstrates that the General Assembly intended that Chariho's educational facilities be available only to students residing in the member towns. An examination of sec. 17, however, brands such reasoning as specious. The clear meaning and mandate of sec. 17 is that *towns* other than Charlestown, Richmond and Hopkinton, may become members of Chariho only through an amendment to the enabling act, which amendment in turn must be adopted by the applying town or towns in the same manner as the enabling act was adopted by the three communities presently composing Chariho.

The section in nowise prohibits Chariho's district committee, with the approval of a majority of the district voters, from making available to students of other towns in the locality some special field such as vocational education. See G. L. 1956 (1969 Reenactment) §16-3-3. Indeed, sec. 11 of the enabling act specifically directs adoption of a curriculum "to the unique requirements of the locality." We think that at least with regard to a special educational service such as vocational training, the General Assembly intended "locality" as encomposing towns which although not members of Chariho desired to provide for their students an educational service not included in their curricula.

We conclude then that there is no merit to any of the contentions advanced by Hopkinton in support of its appeal from the judgment entered for Chariho on its claim.

This brings us then to a consideration of Hopkinton's appeal from the entry of judgment dismissing its counterclaim. The first contention made by the town of Hopkinton in support of this appeal is that the trial justice was without authority to require Hopkinton to furnish the spe-

cial master with a bill of particulars. From this premise, Hopkinton concludes that it could not be defaulted on its counterclaim for failing to comply with an unwarranted order.

While it is true, as Hopkinton points out that G. L. 1956, §9-6-1, which authorized a Superior Court justice to dismiss a plaintiff's claim on book account for failure to furnish a bill of particulars ordered by the court, was repealed with the adoption of the current Super. R. Civ. P., we think that Hopkinton's contention with respect thereto is rooted in semantics.

Here, Hopkinton's counterclaim, as filed, utterly lacks in specificity and constitutes nothing more than a generalization of possible illegal and/or excessive payments over a period of years. In short, it is a classic example of fishing in an area where Hopkinton, as plaintiff, had the burden of alleging specifically a claim, which on proof, relief could be granted.

In his order of reference to a special master, the trial justice directed that officer to serve in a fact-finding capacity but decide no legal issues. No contention is made that such reference was invalid.

In making the order of reference, the trial justice recognized that the special master would be in a hopeless fact-finding position if required to carry out his duties, absent a more definitive statement of Hopkinton's claim, and it was to provide the special master with a definitive claim that the trial justice ordered Hopkinton to furnish "a bill of particulars."

No objection was taken either to the trial justice's reference of the counterclaim to a special master, or the requirement that Hopkinton file a more definitive claim. Rather, it first purported to comply and then, according to the special master's report, was evasive and finally unresponsive.

This course of conduct, taken as a fact, is susceptible to the provisions of Super. R. Civ. P. 53(d)(2), which in pertinent part provides:

> "If without adequate excuse a witness fails to appear or give evidence, he may be punished as for a contempt and be subjected to the consequences, penalties, and remedies provided in Rules 37 and 45."

It was pursuant to the discretion vested in the trial justice by 37(b)(2)(iii) that on acceptance of the special master's report of Hopkinton's failure to cooperate that the trial justice invoked the dismissal sanction.

Even so, Hopkinton vigorously contends that it was a clear abuse of the trial justice's discretion to act on the special master's report without first giving Hopkinton an opportunity to be heard. Super. R. Civ. P. 53(e) does provide for the filing of the master's report with the clerk of the court who shall forthwith give notice thereof to all parties. The rule then provides that any party so notified may, by serving a motion on an adversary party, object to the report and have such objection heard by the court.

The report referred to in this rule, however, clearly contemplates a report which represents the master's findings of the facts involved in the merits of the controversy. Here, the special master's communication to the trial justice, although generically referred to as a "report" was in reality a detailed statement of why the special master was unable to comply with the court's reference.

Notwithstanding this distinction, however, we are clearly of the opinion that it would have been better practice for the trial justice to have notified Hopkinton of the special master's allegations and given Hopkinton an opportunity to be heard.

However, we think that at least in the unique circumstances of the instant case, the trial justice's summary action may be overlooked in light of the subsequent hearing

held on Hopkinton's motion to vacate the judgment dismissing its counterclaim. This overlooking, however, should nowise be taken as a precedent.

It is Hopkinton's final contention that, in any event, the trial justice's decision denying and dismissing its motion to vacate the judgment constitutes a clear abuse of discretion. As heretofore noted, a hearing was held on that motion but the transcript thereof, if any were made, was not made part of the record certified to us. It is elementary that a party seeking to have this court review alleged error, has the burden of furnishing us with so much of the record as may be required to enable this court to pass on the error alleged.

Consequently, there being nothing before us on which to make a determination that the trial justice's decision is an abuse of his discretion, we have no recourse but to conclude that it was not.

All of Hopkinton's contentions made in connection with both appeals are without merit, and the judgment entered in each case is affirmed.

Motion for leave to reargue specific question denied.

*James O. Watts,* for plaintiff.

*Edward M. Botelle* and *Z. Hershel Smith,* for Town of Hopkinton; *Archibald B. Kenyon, Jr.,* for Town of Richmond, defendants.