**Douglas T. BROWN et al.**

v.

**Lorraine ELSTON.**

**Douglas T. BROWN et al.**

v.

**CONCERNED PARENTS IN the CITY OF WOONSOCKET.**

Nos. 80–589–M.P., 81–177–M.P.

Supreme Court of Rhode Island.

May 14, 1982.

§ 15–5–23.

Richard R. Ackerman, Inc., Woonsocket, for petitioners.

Mortimer C. Newton, Providence, for respondents.

## OPINION

BEVILACQUA, Chief Justice.

These are petitions for common-law writs of certiorari, whereby the Woonsocket School Committee (the committee) seeks review of two decisions of the Board of Regents (the board) affirming decisions of the Commissioner of Education (the commissioner). In those decisions, the commissioner directed the committee to provide bus transportation to certain students in the Woonsocket public school system. These cases have been consolidated for the purpose of this review.

*Brown v. Elston* concerns a controversy that arose in April 1980 when the committee terminated busing of all school children in Woonsocket except special-education students and students traveling across districts to school. Twenty-six parents on behalf of their children appealed this decision to the commissioner pursuant to G.L.1956 (1969 Reenactment) § 16–39–2, which provides:

"Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved."

The commissioner held extensive hearings on April 17 and May 2, 1980, at which ten parents testified regarding the difficulties and hazards their children faced when deprived of bus transportation to and from school. In his decision of June 9, 1980, the commissioner concluded, based upon the evidence and testimony he had considered, that "the distances which the appellants' children are required to walk if transportation is not provided for them and the hazards of the routes which their children must travel are such as to make walking to and from school impractical." He therefore directed that the school committee provide transportation to the children whose parents had testified at the hearing pursuant to its obligation under § 16–21–1, which states that such transportation shall be provided by the school committee of any town to pupils "who reside so far from the * * * school which the pupil attends as to make the pupil's regular attendance at school impractical."

The commissioner noted, however, that "[b]ecause this matter inherently requires individualized adjudications as to impracticality * * *, this decision only applies to the children of those ten persons" who testified at the hearing. The commissioner recognized that the remaining parents were free to seek relief by requesting an evidentiary hearing, at which they could submit evidence concerning "the specific facts surrounding the transportation needs of their children." The committee appealed to the board, which found that the facts before the trial commissioner were sufficient to support his decision and affirmed his decree.

*Brown v. Concerned Parents* involves the committee's subsequent elimination of busing for all junior and senior high school students other than those in special-education programs for the 1980–81 school year. One hundred and thirty-nine parents representing one hundred and ninety-three junior and senior high school students petitioned the commissioner for a hearing to review the committee's action pursuant to § 16–39–2. On December 29, 1980, the commissioner notified these parents by letter that his office was "prepared to rule

summarily in favor of all appellants whose children live beyond the following distances from school: a) Elementary (grades K–6)—1 mile b) Junior High (grades 7–9)—1½ miles c) Senior High (grades 10–12)—2 miles. ([Only] [t]hose appellants whose children do not meet the foregoing criteria will be required to attend a hearing.)" The distances cited by the commissioner had previously been adopted by the committee as those beyond which busing would be provided.

At a hearing on January 30, 1981, counsel for the committee objected to the procedure that the commissioner had adopted. He claimed that the December 29 letter indicated that the commissioner would arbitrarily enforce distances previously set by the committee without determining whether those distances were maximums that children could practically travel to and from school without busing. The committee presented evidence showing that it had adopted the distances cited by the commissioner based on the number of buses available rather than the practicality of regularly traveling those distances to school without busing. The committee also attempted to show that most students were able to attend school regularly without undue difficulty after busing was terminated. The commissioner indicated, however, that "we did state on December 29 that we intended to rule summarily on distance alone for all pupils who live beyond the distance stated in that letter, so that * * * however material this may be to * * * the School Committee's case * * *, this would not change our ruling as to what we stated on December 29."

The parents presented no evidence at the hearing. In his decision of February 9, 1981, however, the commissioner noted that the committee previously provided transportation to students living beyond the specified distances and that those distances were consistent with distances adopted by other school committees in the state. He therefore found that the students lived so far from school as to make walking to and from school impractical and ordered that the committee provide busing. The board affirmed this decree.

The following issues are before this court for review: (1) whether the commissioner properly construed § 16–21–1 in deciding that the committee was obligated to provide bus transportation; (2) whether the evidence presented at the hearings on April 17 and May 2, 1980, supports the commissioner's findings in *Brown v. Elston* ; (3) whether the committee has standing to challenge § 16–21–1 on the ground that it is unconstitutionally vague; and (4) whether the committee was denied its right to a hearing under § 16–39–2 by the commissioner's prejudgment of the appeal in *Brown v. Concerned Parents.*

I

The committee contends that the commissioner erred in *Brown v. Elston* by construing § 16–21–1 to allow consideration of the hazards presented by the particular routes that the children would have to walk in determining that the children were entitled to bus transportation. Consideration of factors other than distance is improper, the committee asserts, because § 16–21–1 requires transportation to be provided only for children who live "so far" from their schools as to make regular attendance at school impractical.

■ The commissioner's decision of June 9, 1980 plainly indicates that he found "that the distances the children would have to walk if transportation is not provided for them are unreasonably long * * *." Thus, even if the narrow reading of § 16–21–1 urged by the committee were adopted, the finding of the commissioner concerning the distances involved is sufficient to support his order. The commissioner's additional finding that "the hazards of the routes which they must travel are extremely dangerous" is, on this view, superfluous.

■ Section 16–21–1, however, should not be read so narrowly as to preclude consideration of factors other than distance in determining whether or not a child is entitled to bus transportation. The critical

issue under the statute is whether the distance the child travels is so great as to make it impractical for the child to attend school regularly. The commissioner therefore may properly consider a host of factors affecting the practicality of traveling the distance to and from school.

■ This court has stated previously that "the purpose of * * * [16–21–1] is to encourage school attendance and to protect the health, safety and welfare of the pupil." *Chaves v. School Committee of Middletown*, 100 R.I. 140, 143, 211 A.2d 639, 641 (1965). Inasmuch as the health, safety, and welfare of a child affect the practicality of traveling to and from school, these factors ought to be considered in determining whether or not § 16–21–1 imposes upon a school committee an obligation to provide bus transportation. The statute, thus construed, duly recognizes that traveling a given distance along a well-lighted road with sidewalks, moderate traffic, and few intersections may be practical for a high school student whereas traveling a shorter distance along congested, poorly lighted roads with no sidewalks and many busy intersections may be impractical for a kindergarten pupil. *See Town of Waterford v. Connecticut State Board of Education*, 148 Conn. 238, 169 A.2d 891 (1961) (requirement of transportation for children wherever reasonable and desirable comprehends not only distance but also safety factors).[1]

■ The committee next argues that the commissioner improperly construed § 16–21–1 because he failed to consider the availability of public transportation to the pupils and the ability of the school committee to pay for transportation in determining the committee's obligations under the statute. The committee argues that if the statutory criteria is practicality, these factors ought to have been accorded weight.

Section 16–21–1 requires the committee to provide transportation to students for whom it would be impractical to attend school regularly because of the distance they would have to travel. The commissioner therefore need only determine that it would be impractical for a student to go back and forth to school on his own to require that the school committtee provide transportation to the student. The committee cannot avoid its statutory obligation to supply transportation to students who would otherwise find it impractical to attend school by neglecting to set aside sufficient funds to do so. Similarly, it cannot shift to the students the cost of providing busing by forcing them to pay for public transportation.

II

The committee asserts that the evidence presented at the hearings on April 17 and May 2 is insufficient to support the findings made by the commissioner in his decision of June 9.[2]

Section 16–39–2 confers upon the commissioner broad powers to pass on appeals from decisions of school committees and the duty to make a de novo decision after examining the issues involved. *School Com-*

---

1. In support of their argument on this point, the committee cites decisions from New York holding that under that state's bus-transportation statute, distance rather than hazard determines whether a child is entitled to busing. *See, e.g., Studley v. Allen*, 24 App.Div.2d 678, 261 N.Y.S.2d 138 (1965) (construing N.Y. Education Law § 3635 (McKinney 1953)). The committee's reliance on New York cases is misplaced. The New York statute obliges local school districts to provide transportation to students living beyond specified distances from their schools. The Rhode Island Legislature did not, however, fix in absolute terms the maximum distance a child would be required to travel on his own.

2. The committee also argues that the commissioner's order that it supply busing to the children of each of the parents who testified at those hearings is improper because it fails to differentiate between the older and the younger children involved. Although the age of a student might affect the practicality of regularly traveling a particular route to attend school, *see* discussion at I, *supra*, age alone would not always be determinative. Thus, the committee's objection to the commissioner's finding that traveling the routes the children encountered would be impractical for each of them can be treated only as a challenge to the sufficiency of the evidence in support thereof.

*mittee of Pawtucket v. State Board of Education,* 103 R.I. 359, 364, 237 A.2d 713, 716 (1968); *see McSally v. Board of Regents,* R.I., 401 A.2d 438 (1979). Pursuant to his powers under this statute, the commissioner held extensive hearings at which ten parents, the Woonsocket police department's uniformed-personnel commander, and two Woonsocket school officials testified.

■ The parents' testimony focused on the age of their children, the distance they had to travel to school, the hazards they encountered on the routes,[3] and the difficulty of providing private automobile transportation. The city officials did not offer testimony contradicting that of the parents concerning the children's age. They did, however, indicate that the children could reduce the distance they would have to travel by taking shortcuts over bridges and through yards and that police patrols had been increased during the times the children travel to and from school to ensure their safety. The principal of one of the schools that serves these children indicated that attendance at his school had not decreased significantly since the city ceased to provide bus transportation. The deputy superintendent of schools testified that apart from the two or three days immediately following the cessation of busing, attendance in the schools throughout the city had been normal.

The committee asserts that because uncontradicted evidence showed that attendance had not suffered appreciably from the busing cutoff, the commissioner could not find that without busing regular attendance was impractical. We disagree. Children and their parents might take steps necessary to ensure regular attendance, however impractical those steps may be, while pursuing an appeal of the committee's denial of their statutory right to busing. Moreover, to hold that the commissioner must infer from unchanged attendance during the pendency of a busing appeal that busing is not necessary would effectively preclude parents from expending extra effort to ensure regular attendance during the appeal period.

■ The committee also maintains that the commissioner erred because he "consistently accepted the testimony of the Concerned Parents" regarding the dangers that their children encountered even though that testimony was "oftentimes contradicted by the witnesses for the Woonsocket School Committee."[4] It is well settled that our review of a decision of the commissioner "has nothing to do with deciding the facts in the case." *Appeal of Cottrell,* 10 R.I. 615, 618 (1873). Indeed, the court reviews a decision of the commissioner on the facts

---

3. In addition to their own opinions regarding the hazards of traveling the roads to and from school, the parents introduced into evidence eleven photographs of the streets and intersections along their children's routes.

4. The relevant portion of the commissioner's decision states:

"Having considered the evidence and the testimony, it is our opinion that the distances which the appellants' children are required to walk if transportation is not provided for them and the hazards of the routes which their children must travel are such as to make walking to and from school impractical. All but two of the twenty-seven children are in elementary or junior high schools and they range from six to fourteen years in age. Although there is some difference of opinion as to the exact distances they would be required to walk, we find that the distances from the children's homes to their respective schools generally range from approximately two miles to approximately three and one-

half miles. We also find that the routes which they must travel are heavily traveled highways and/or narrow roads, along which there are no sidewalks and little or no space on the side of the roads on which persons could walk safely, and that the highways are also interspersed with several intersections and driveways leading into shopping plazas and other commercial establishments. Although the Woonsocket Police Department has taken measures since April 1, 1980 to provide additional protection for the children walking to and from school, it is our opinion that they fall far short of providing adequately for their safety. In summary, we find that the distances the children would have to walk if transportation is not provided for them are unreasonably long and the hazards of the routes which they must travel are extremely dangerous. We believe that the criteria of § 16–21–1 * * * have been amply fulfilled."

found by him unless those facts are unsupported by the evidence. *Campbell v. School Committee of Coventry*, 67 R.I. 276, 21 A.2d 727 (1941). The record contains ample evidence supporting the commissioner's findings; the mere fact that the record also contains evidence that would support contrary conclusions is therefore irrelevant.

### III

In both *Brown v. Elston* and *Brown v. Concerned Parents*, the committee challenges the sufficiency of the legislative guidelines set forth in § 16–21–1. The committee maintains that the statute's mandate that busing be provided to pupils living so far from their school as to make regular attendance impractical is so vague and indefinite that to compel the committee to obey the statute would deny it due process of law. The parents argue that the committee, being a creature of the state, lacks standing to challenge the statute on due-process grounds. Before addressing the committee's due-process argument, we must consider the threshold issue of whether the committee has standing to assert a due-process claim. *See East Greenwich Fire District v. Penn Central Co.*, 111 R.I. 303, 302 A.2d 304 (1973).

In *Chariho Regional High School District v. Town Treasurer of Hopkinton*, 109 R.I. 30, 280 A.2d 312 (1971), this court held that a municipality, as a creature of the State Legislature, cannot challenge the constitutionality of legislation requiring it to pay money to a regional school district. *Id.* at 41, 280 A.2d at 318 (citing *City of Providence v. Moulton*, 52 R.I. 236, 160 A. 75 (1932)). The committee stands in no stronger position against the state than a municipality does. Article XII of the Rhode Island Constitution vests the State Legislature with sole responsibility in the field of education. School committees act merely as agents of the state in fulfilling their statutorily conferred duties. *Royal v. Barry*, 91 R.I. 24, 160 A.2d 572 (1960); *cf. Cummings v. Godin*, 119 R.I. 325, 377 A.2d 1071 (1977) (local school committees are municipal bodies acting as agents for the state). It is apparent, therefore, that as the state's agent, the committee lacks standing to challenge on vagueness grounds the constitutionality of the statute requiring that it provide busing. *Accord, Town of Waterford v. Connecticut State Board of Education, supra.*

### IV

In *Brown v. Concerned Parents*, the committee challenges the commissioner's decision of February 9, 1981, reinstating busing for junior and senior high school students. The committee argues that by deciding that he would rule in favor of children living beyond specified distances prior to the January 30, 1981 hearing, the commissioner deprived the committee of its right, as guaranteed by the due-process clause, to an opportunity to be heard on the issue of whether pupils living beyond those distances could practically attend school on their own.

This court has repeatedly stated that "§ 16–39–2, in requiring that appeals from school committee actions to the Commissioner of Education are heard 'after notice to the parties interested of the time and place of hearing * * *' contemplates a de novo hearing by the commissioner." *Slattery v. Cranston School Committee*, 116 R.I. 252, 263, 354 A.2d 741, 747 (1976). At the January 30 hearing, which ought to have served as the basis for the commissioner's ruling on the instant appeal, he conceded that evidence presented by the committee "however material * * * would not change our ruling * * * of December 29." In so ruling, the commissioner deprived the committee of its rights, pursuant to § 16–39–2, to an opportunity to present evidence and to have that evidence considered by the commissioner. By enforcing a decision made prior to the evidentiary hearing the commissioner rendered that hearing a nullity. *Brown v. Concerned Parents* must therefore be remanded to the commissioner for a hearing at which time the parties may present evidence showing whether or not the proposed distances are maximums beyond which regular attendance at school is

impractical. After such hearing the commissioner may render a decision giving due consideration to the evidence presented.

Accordingly, the petition for certiorari in *Brown v. Elston* is denied and dismissed, and the records of that case certified to this court are ordered returned to the board with our decision endorsed thereon; the petition for certiorari in *Brown v. Concerned Parents in the City of Woonsocket* is granted, the board's decision in that case is quashed, and the records certified to us are returned to the board so that the case may be remanded to the commissioner for further proceedings in accordance with this opinion.