TOWN OF WATERFORD *v.* CONNECTICUT STATE BOARD OF EDUCATION

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

240

Argued January 4—decided April 11, 1961

*Edmund W. O'Brien,* for the appellant (plaintiff).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, C. J. The plaintiff, the town of Waterford, brought this action in two counts. We follow the trial court in treating the first count as an appeal from an order of the defendant, the state board of education, requiring the plaintiff to provide transportation for certain pupils attending the Jordan School in Waterford; General Statutes § 10-187; and in treating the second count as raising the question of the power of the defendant to enter the order. General Statutes §§ 10-186, 10-220. The court held, in substance, that the defendant was empowered under the statutes to issue the order, that the procedural requirements for the issuance of the order had been met, and that the order was reasonable. The court dismissed the appeal as set forth in

the first count and found the issues for the defendant on the second count. The plaintiff has appealed.

We will consider first the claims made under the second count. Sections 10-186 and 10-187, and the pertinent provisions of § 10-220, are set forth in the footnote.[1] The plaintiff claims, in effect, that the failure of a town board of education to furnish transportation does not constitute a failure to furnish school accommodations under § 10-186. It argues that § 10-186 and § 10-220 are two separate and distinct statutes, each designed to enable parents to comply with § 10-184, which requires parents and those having control of children over seven and under sixteen years of age to send them to a public

[1] "Sec. 10-186. DUTIES OF TOWNS. HEARING. APPEAL. Each town shall furnish, by transportation or otherwise, school accommodations so that each child over six and under sixteen years of age may attend school as required in section 10-184. If any town fails to furnish such accommodations, the parent or guardian of any child who is deprived of schooling, or an agent or officer whose duty it is to compel the observance of the laws concerning attendance at school, may, in writing, request a hearing by the board of education, and such board shall give such person a hearing within ten days after receipt of written request therefor and shall make a finding within ten days after such hearing. Any parent, guardian or officer aggrieved by such finding may take an appeal therefrom to the state board of education. The chairman of the state board of education shall designate a member or members of such board or a member or members of the professional staff of the state department of education to hold a public hearing in the town in which the cause of the complaint arises and report thereon to said board. Such hearing members may examine witnesses but shall have no other powers vested in the state board of education under this section. If, after considering such report, the state board of education finds that any child is illegally or unreasonably deprived of schooling, said board shall order the board of education of such town to make arrangements to enable the parent or guardian to comply with the provisions of section 10-184. If such school officers fail to take action upon such order within one month after receipt thereof and no suitable provision is made for such child deprived of schooling, there shall be a forfeiture of the money appropriated by the state for the support of schools amounting to two dollars and

school or to show that they are securing equivalent instruction elsewhere. The plaintiff argues further that the defendant does not have the power to control all the details of how "[e]ach town shall furnish, by transportation or otherwise, school accommodations." § 10-186. It is true that the history of the legislation relating to the transportation of school children began with a statute which provided that when any school in a town was discontinued (presumably for lack of a sufficient number of pupils), the town should "furnish, whenever necessary, by transportation or otherwise, school accommodations so that every child over seven and under sixteen" could attend some school.[2] Apparently, this legisla-

twenty-five cents for each child for each week such child is deprived of schooling.

"Sec. 10-187. APPEAL FROM FINDING OF STATE BOARD. Any parent or guardian or any town aggrieved by the finding of said state board of education rendered under the provisions of section 10-186 may appeal to the superior court for the county within which such town is situated or to any judge thereof in vacation."

"Sec. 10-220. DUTIES OF BOARDS OF EDUCATION. Boards of education . . . shall make such provisions as will enable each child of school age, residing in the town, who is of suitable mental and physical condition, to attend some public day school for the period required by law and provide for the transportation of children wherever transportation is reasonable and desirable . . . ."

[2] Public Acts 1903, c. 210, § 1. The legislative history of General Statutes §§ 10-186, 10-187 and 10-220 is as follows:

§ 10-186—Public Acts 1903, c. 210; Public Acts 1909, c. 116; Public Acts 1911, c. 173; repealed, Public Acts 1913, c. 47; reenacted, Rev. 1918, § 836; Rev. 1930, § 903; Public Acts 1931, c. 249, § 69 (Sup. 1931, § 130a); Cum. Sup. 1935, § 249c; Rev. 1949, § 1447; Cum. Sup. 1955, § 941d.

§ 10-187—Public Acts 1931, c. 256, § 4 (Sup. 1931, § 131a); Cum. Sup. 1935, § 250c; Rev. 1949, § 1448.

§ 10-220—Public Acts 1909, c. 146, § 4; Public Acts 1913, c. 178; Rev. 1918, § 982; Rev. 1930, § 974; Public Acts 1931, c. 249, § 7 (Sup. 1931, § 171a); Public Acts 1933, c. 213 (Cum. Sup. 1933, § 263b); Cum. Sup. 1935, § 296c; Sup. 1943, § 240g; Sup. 1945, § 237h; Rev. 1949, § 1501; Cum. Sup. 1955, § 957d.

tion was designed, originally, to make schooling available, without the necessity of a child's walking unreasonable distances, to every child required by law to attend school. The distance from the child's home to the school was the sole determining factor on the question of transportation. It appears that the Waterford board of education still follows this criterion. Its secretary testified that it was the board's policy to provide transportation only for children living one or more miles from an available school.

In 1931, the General Assembly enacted chapter 249, § 7, of the 1931 Public Acts; Sup. 1931, § 171a; as amended, Cum. Sup. 1935, § 296c (now General Statutes § 10-220); which eliminated the permissive power implicit in the words "may provide . . . transportation" which were contained in § 974 of the 1930 Revision and its predecessors. The language in the present statute, § 10-220, ". . . shall make such provisions as will enable each child of school age . . . to attend some public day school . . . and provide for the transportation of children wherever transportation is reasonable and desirable . . . ," comprehends not only distance but safety factors. See *Snyder* v. *Newtown*, 147 Conn. 374, 382, 391, 161 A.2d 770. Reading §§ 10-186 and 10-220 together, as they must be read, we conclude that the failure of a town to provide the transportation which is reasonable and desirable (§ 10-220) for the safety of the children attending the particular school they are required to attend constitutes a failure to furnish school accommodations within § 10-186. Stating it another way, the duty to "furnish, by transportation or otherwise, school accommodations" (§ 10-186) means that a town shall provide a proper school building, staffed with legally

competent teachers, and transportation to that school if the distance from the pupils' homes to the school or the hazards they may encounter on their way to and from school, or both, make transportation reasonable and desirable. Whether the town has fulfilled its duty can be questioned by a parent or guardian or by an official who has the duty of enforcing the laws concerning school attendance. A hearing before the local board can be requested. A person aggrieved by the local board's finding may appeal to the state board of education, as was done in the case at bar. An appeal lies from the finding of the state board to the Superior Court. § 10-187. It is true that the state board cannot dictate, as between reasonable alternatives, what the local board shall provide, but the state board can require a reasonable compliance with the general mandate contained in the statutes. The claim of the parents here was that transportation was required because of traffic hazards which imperiled their children in walking to and from school. The order of the state board of education does not require, necessarily, that the town provide sidewalks and safety guards. It states that transportation shall be furnished until such walks and necessary crossing guards are provided along route 1A. If sidewalks and necessary crossing guards are not provided, the local board still has the alternative of providing transportation or of presenting to the state board some other adequate method of dealing with the traffic hazard and seeking a modification of the order. The trial court was correct in its conclusion that the defendant was empowered by § 10-186 to issue the order.

The plaintiff challenges the constitutionality of § 10-186 on the ground that it fails to provide legis-

lative standards for the proper guidance of the state board. Towns and local boards of education are creatures of the state, and though they may question the interpretation, they cannot challenge the legality, of legislation enacted by their creator. *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 513, 45 A.2d 831; *Sanger* v. *Bridgeport,* 124 Conn. 183, 188, 198 A. 746. This claim is without merit.

We will consider now the first count which, as an appeal to the Superior Court from the defendant's action, raises the question whether the court concluded correctly that the action of the defendant was not illegal by reason of the fact that it failed to comply with the procedural requirements of the statutes, and that its action was not unreasonable and arbitrary. The transcript of the hearing, conducted by Dr. Theodore Powell as a hearing officer for the defendant, and the exhibits offered at the hearing disclose the following facts: On November 5, 1958, Jeannette M. Neilan and Philip L. Stocklin addressed a letter to the chairman of the Waterford board of education enclosing a petition containing about 240 signatures representing approximately 180 families having 290 children in attendance at the Jordan School. This school is located near the junction of route 1A and route 156. The petitioners claimed that the safety of their children was jeopardized by the traffic and topographical hazards encountered by them on their way to school. Although the children lived less than a mile from the school, and a mile was the minimum distance for which transportation was furnished by the Waterford board, the petitioners requested that transportation be provided until safe sidewalks could be constructed and other precautionary measures taken.

The local board conducted a hearing and denied the petition. One hundred and nine of the families then appealed to the defendant.

Dr. Powell, one of six members of the staff of the state department of education who had been designated by the defendant's chairman as school transportation hearing officers, conducted a public hearing in Waterford on February 6, 1959. Because the children attending the Jordan school lived in different areas, although in the same general neighborhood, and those living in each area faced similar traffic conditions on their way to and from school, the children were placed, with the approval of the appellants and a representative of the local board, in six separate categories. Dr. Powell asked those present at the hearing, including members of the Waterford board, whether there would be any objection if he examined the routes traveled by the children to the school. There being none, he, accompanied by the secretary of the Waterford board, one of the appellants and a representative of the defendant, made an investigation of these routes after the hearing. He subsequently, on February 18, inspected the routes a second time, alone. He noted that route 1A, both east and west of the school, was a main highway leading west from New London and was very heavily traveled by fast moving vehicular traffic, and that in some places children going to and from the school had to walk very near the edge of the traveled portion of the highway, owing to topographical features. He prepared a report recommending transportation for the children in three of the six categories and measures designed to improve safety for the children in the other three categories.

The court made a limited finding of facts pertain-

ing to the administrative procedure followed by the defendant in calling and conducting the hearing and issuing its order. The plaintiff has assigned error in this finding because the court failed to incorporate certain paragraphs of the draft finding. We shall take into consideration the facts stated in these paragraphs which appear to be admitted or undisputed and essential to the claims made by the plaintiff. Practice Book § 396.

The plaintiff claims that the number of school children involved in the petition addressed to, and in the hearing held by, the Waterford board was not definitely known by the board and that not all of those who petitioned it appealed to the defendant. Under the circumstances of this case, it was not necessary that those who appealed to the state board be identical with the petitioners to the local board. Section 10-186 states that "[a]ny parent, guardian or officer aggrieved by . . . [the] finding [of the local board after a hearing on the failure to furnish school accommodations] may take an appeal therefrom to the state board of education." This would permit an appeal by any parent who could show that he was aggrieved by the refusal of the local board to provide transportation for his child. The plaintiff makes no claim that those who appealed to the defendant were not aggrieved persons. Furthermore, the petition did not involve merely a single isolated family with one or more school children. It concerned many families, with many school children, all more or less similarly situated. It presented a community problem. A petition to the local board need not observe the formalities of a pleading in a court of law. The local board, as an administrative agency, is charged with the responsibility of requiring the production

of sufficient evidence and of conducting the necessary investigation so that it may have adequate facts for a fair appraisal of the petitioners' request. See *Conley* v. *Board of Education,* 143 Conn. 488, 495, 123 A.2d 747, and cases cited. The local board had its own reasons for refusing the transportation requested, and those reasons appear in the transcript of its hearing. The defendant was not confined to a consideration of the transcript of the hearing before the local board. Section 10-186 authorizes representatives of the defendant to conduct a hearing de novo, examine witnesses, and develop facts in addition to those which were before the local board. See *Schultz* v. *Zoning Board of Appeals,* 144 Conn. 332, 334, 130 A.2d 789; *Grady* v. *Katz,* 124 Conn. 525, 530, 1 A.2d 137; *Levine* v. *Zoning Board of Appeals,* 124 Conn. 53, 58, 198 A. 173.

The plaintiff claims that Dr. Powell was not properly designated by the chairman of the defendant to conduct the hearing. Dr. Powell and five others, all members of the staff of the state department of education, had been designated, in a letter addressed by the chairman of the defendant to the commissioner of education, to hold hearings on school transportation matters for the school year 1958-59. This was a sufficient compliance with the statute. It was not improper for the officer conducting the hearing to visit the locale involved and make an investigation of his own, in the manner pursued in this instance. As already noted, Dr. Powell's inspections were made after an opportunity was offered to voice an objection, and one inspection was made in the company of representatives of the local board, the defendant and the parents. *Hlavati* v. *Board of Adjustment,* 142 Conn. 659, 666,

116 A.2d 504; *Jennings* v. *Connecticut Light &
Power Co.,* 140 Conn. 650, 675, 103 A.2d 535. The
plaintiff claims that the defendant did not base its
order upon the testimony and exhibits presented at
the hearing but solely upon the report of its hear-
ing officer. While § 10-186 allows the hearing officer
to hold a public hearing and examine witnesses, it
does not allow him to exercise any other powers
vested in the state board. It does require him to
make a report to the board. This report could prop-
erly include his recommendations. The statutory
procedure was followed in the case at bar. Dr.
Powell's report was sent to the defendant. A digest
of the transcript of the testimony taken at the hear-
ing and Dr. Powell's recommendations were sent to
each member of the defendant prior to the meeting
when the order was made. The entire transcript
was available at that meeting. If the order of the
defendant on the basis of the information put be-
fore it was sound in the light of the transcript, the
fact that every member had not personally read the
transcript would not defeat the order. *Graham* v.
*Houlihan,* 147 Conn. 321, 332, 160 A.2d 745. It was,
however, the duty of each member fully to acquaint
himself with sufficient facts to make an intelligent
and just decision. It is significant that the defend-
ant made additions to and deletions from Dr.
Powell's recommendations. It is to be noted also
that the additions limited the furnishing of trans-
portation until such time as the town of Waterford
provided sidewalks and crossing guards. The fact
that the town had proposed to build sidewalks was
one of the factors entering into the local board's
decision not to provide the transportation re-
quested.

It is true that an administrative board should

follow, to the letter, the statutory procedure outlined for it. When, however, the lapses are not fundamental to the board's jurisdiction, as, for example, a failure to give due notice would be, and the record of the board demonstrates that a full and impartial hearing was held and that a reasonable decision was reached, the court, on appeal, should not disturb that decision. *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747; *Gibson* v. *Medical Examining Board,* 141 Conn. 218, 221, 104 A.2d 890. The trial court was right in its conclusion that the hearing in the instant case was lawfully held, that the order was properly issued and that the action of the defendant was not arbitrary and unreasonable.

The plaintiff has assigned error in two rulings on evidence. The first ruling as to which error was assigned was correct and requires no discussion. As to the second, the plaintiff failed to follow the rule pertaining to the laying of a proper foundation for an appeal, and we do not consider the ruling. *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153.

There is no error.

In this opinion KING, MURPHY and MELLITZ, Js., concurred.

SHEA, J. (dissenting). Section 10-186 did not authorize the state board of education to issue to the town of Waterford an order "to furnish . . . transportation [for certain children] . . . until sidewalks and/or crossing guards are provided along Route 1A." Under this statute, each town is required to furnish, "by transportation or otherwise," school accommodations so that each child, within specified ages, may attend school as required in § 10-184. Thus, the statute means that each town

must furnish school accommodations either by transportation or in other ways. Provisions or arrangements for the instruction of children as required in § 10-184 are made by the local board of education under the authority of §10-220, a portion of which is set out in a footnote to the majority opinion. In the portion which does not appear, local boards are given additional authority to carry out the obligation to furnish school accommodations in various ways. It is true that under § 10-220 a local board is to "provide for the transportation of children wherever transportation is reasonable and desirable," but that is only one of the different ways in which school accommodations may be furnished. And so § 10-186, in requiring towns to furnish school accommodations, quite properly provided that these accommodations should be furnished by transportation "or otherwise," i.e., in any other way legally authorized by the board of education. The school accommodations required under § 10-186 by "transportation or otherwise" do not fall within the narrow orbit indicated by the opinion of the majority.

Before the state board of education can issue an order under § 10-186, it must find that a child is illegally or unreasonably deprived of schooling. On such a finding, it must issue an order to the local board to make arrangements to enable the parent or guardian to comply with the provisions of § 10-184. The state board is not authorized to give specific directions in the order. The reason for this is obvious when we bear in mind that the local board, as previously pointed out, has a choice of various ways of providing school accommodations. The local board is not, and cannot be, limited to transportation alone. As it is expressed in § 10-186,

the town must furnish school accommodations by transportation "or otherwise." Accordingly, when the state board has issued an order to the local board under § 10-186, the local board is given as much as a month within which to make suitable provision for the child deprived of schooling. Suitable provision may include transportation or not. In the discretion of the local board, suitable provision may be by any one of the various ways authorized by law. The manner in which the problem is to be solved is for the local board, acting within the scope of its legal powers.

The majority of the court concede that "the state board cannot dictate, as between reasonable alternatives, what the local board shall provide, but the state board can require a reasonable compliance with the general mandate contained in the statutes." And again, the majority say, "[i]f sidewalks and necessary crossing guards are not provided [as ordered], the local board still has the alternative of providing transportation or of presenting to the state board some other adequate method of dealing with the traffic hazard and seeking a modification of the order." It is difficult to reconcile these statements with the conclusion reached in the opinion, that the state board of education was empowered by § 10-186 to issue an order which gave specific directions to the town as to the means, methods and details to be followed in providing school accommodations. What practical purpose is served by issuing an order which, although not saying so, still provides the local board with legal alternatives? Of what efficacy is such an order? The simple answers to these questions are found in the language of the statute itself. The power of the state board is limited to the issuance of a general order requiring

the local board to make arrangements which will enable a parent to comply with the law and send his children to school. So long as the local board provides school accommodations, the state board cannot, and the majority, in effect, so hold, arrogate the right to fix the means or methods by which the local board carries out its legal obligations. The state board exceeded its authority when it ordered the board of education of the town of Waterford to furnish transportation for certain children.

Moreover, the procedure followed in this case did not conform to the statutory requirements. Section 10-186 authorizes the following procedure, in the sequence stated: (1) An appeal to the state board by a parent, guardian or attendance officer aggrieved by the finding of the local board of education; (2) the designation by the chairman of the state board of a member of that board or of the professional staff of the state department of education to hold a public hearing in the town in which the cause of complaint arose; (3) a report to the state board by the member who held the hearing. On November 5, 1958, before this appeal was taken to the state board of education, the chairman of that board had appointed Dr. Powell and five other members of the professional staff of the state department of education as school transportation hearing officers. Dr. Powell carried on correspondence, and was in communication, with the man who had circulated the petition in Waterford. While the appeal from the finding of the local board was addressed to the state board on forms provided for the purpose, those forms were enclosed in a letter addressed to Dr. Powell on January 14, 1959. There is nothing in this record to show when, if ever, the appeal papers officially reached the state board. Dr.

Powell fixed the time and place for a public hearing on the appeal without specific designation or authority from the chairman of the state board. The evidence shows that he acted on his own initiative, without direction from, or consultation with, any member of the state board. By what magic he, rather than any one of the other persons eligible, under the statute, for designation as a hearing officer, assumed the power to act in this case has not been disclosed or explained. Of the nine members of the state board, notice of the hearing was given to only one, a resident of New London County. After the hearing, Dr. Powell made a digest of the testimony taken and sent a copy to each member of the state board. The indications are that none of them ever read the evidence. Dr. Powell made certain recommendations which, with one slight change, were adopted by the state board. So far as appears in this record, Dr. Powell assumed, without authority, the obligations and responsibilities of the state board in this case. This was contrary to the express direction in § 10-186 that "hearing members may examine witnesses but shall have no other powers vested in the state board of education under this section." The procedure followed by the state board of education was illegal and should not be approved by this court.

The appeal from the order of the state board of education should have been sustained by the trial court.