BOARD OF EDUCATION OF THE TOWN OF
STAFFORD *v.* STATE BOARD OF
EDUCATION ET AL.
(SC 15656)

Callahan, C. J., and Borden, Berdon, Palmer and McDonald, Js.

Argued October 31, 1997—officially released March 3, 1998

*Michael P. McKeon,* for the appellant (plaintiff).

*Edward Muska,* for the appellees (defendant Anthony Armelin et al.).

*Joan G. Libby* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

MCDONALD, J. The principal issue in this administrative appeal is whether the defendant, the state board of education (state board),[1] properly decided that the

---

[1] The individual defendants, Anthony Armelin and Lynda Schold, are the parents of children who were attending St. Edward School, a private, non-profit school, at the time of the original request for transportation for St. Edward School students. Although Schold's child no longer attends St. Edward School, we will refer to Armelin and Schold as the parents throughout this opinion.

plaintiff, the board of education of the town of Stafford (Stafford board), improperly had denied transportation to students of the St. Edward School, a private, nonprofit, parochial school, for four days when the Stafford public schools were closed. The Stafford board appealed from the state board's decision to the Superior Court, which affirmed the decision of the state board that, pursuant to General Statutes § 10-281,[2] the Stafford board must provide transportation for St. Edward School students on days St. Edward School is in session. The Stafford board appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The facts are not in dispute. Saint Edward School has followed the same school calendar as the Stafford public schools since at least 1984. The Stafford board provides school bus transportation for children attending both public and private schools. Saint Edward School students ride on the same buses as the public school students and are subject to the same distance regulations as set forth by the Stafford board.

The Stafford board normally announces its public school calendar before St. Edward School, and St. Edward School generally follows the public school calendar. After releasing the 1992–93 school year calendar, the Stafford board amended it to delay the opening day of school from August 31, 1992, to September 8, 1992, due to building construction problems at several Stafford schools. Saint Edward School was scheduled to open, however, on August 31, 1992, and objected to the denial of bus transportation for its students. A

---

[2] General Statutes § 10-281 provides in relevant part: "Any . . . school district shall provide, for its children . . . attending nonpublic nonprofit schools therein, the same kind of transportation services provided for its children . . . attending public schools . . . . "

temporary injunction requiring the Stafford board to provide transportation services for September 1 through September 8, 1992, was obtained in Superior Court by the parents. The Stafford board did not provide transportation for St. Edward School students on August 31, 1992, but did so for the remaining days.

In the 1993–94 school year, both the Stafford public schools and the St. Edward School planned a spring vacation for April 18 through April 22, 1994. In order to make up school days cancelled due to snow, however, St. Edward School later rescheduled classes for April 18 through April 20. The Stafford public schools remained closed for the entire spring vacation and the Stafford board denied transportation to St. Edward School students during that three day period.

Thereafter, on September 30, 1994, the parents requested a hearing, alleging a failure to provide school accommodations as required by General Statutes § 10-186[3] and transportation services as required by § 10-281. At the October 25, 1994 hearing, the Stafford board dismissed the complaints as moot because the dates under dispute already had passed. The parents appealed to the state board,[4] which held a hearing before an impartial hearing board. The hearing officer found that the Stafford board is required to provide transportation services to St. Edward School students on all days when the private school is in session, regardless of whether

---

[3] General Statutes § 10-186 (a) provides in relevant part: "Each local or regional board of education shall furnish, by transportation or otherwise, school accommodations so that each child . . . may attend public school . . . . Any board of education which denies school accommodations . . . shall inform the parent . . . of such child . . . of his right to request a hearing by the board of education . . . . "

[4] The parents appealed under General Statutes § 10-186 (b) (2), which provides in relevant part: "Any such parent . . . aggrieved by the finding . . . may take an appeal from the finding to the State Board of Education. . . . The State Board of Education shall . . . hold a public hearing in the local . . . school district in which the cause of the complaint arises. . . ."

the Stafford public schools are closed. The state board issued a decision in accordance with the hearing officer's findings.

The Stafford board makes several arguments on appeal. It claims that, in affirming the state board's decision, the trial court ruled improperly because: (1) the underlying request for transportation was moot; (2) the state board exceeded its authority in considering the merits of the case rather than limiting its review to the mootness question; (3) the state board's decision constituted a declaratory ruling, which it lacked the authority to issue absent compliance with the applicable statutory procedures; and (4) the plain language of § 10-281 does not support the state board's interpretation. The Stafford board also argues that the state board's interpretation of § 10-281 constitutes a violation of both the first amendment to the United States constitution and article seventh of the Connecticut constitution. We disagree with these claims and, consequently, affirm the judgment of the trial court.

I

We first address the Stafford board's argument that the trial court improperly determined that the dispute over the denial of transportation was not moot or, alternatively, that even if it was moot, it nonetheless was entitled to review under the "capable of repetition, yet evading review" exception to the mootness doctrine. We conclude that this case involved an active controversy and, therefore, was not moot.

A

We first consider whether this case was moot at the time of the October 25, 1994 hearing before the Stafford board. Our mootness law is well settled. "Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts

exist for determination of actual and existing controversies . . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Hallas* v. *Windsor*, 212 Conn. 338, 347, 562 A.2d 499 (1989). "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) Id., 347–48.

We conclude that an actual controversy existed in this case. For two consecutive school years, the Stafford board denied transportation to St. Edward School students on days when Stafford public schools were closed. Members of the Stafford board indicated a disposition to continue denying transportation to St. Edward School students when the public schools were not in session. The counsel for the Stafford public school administration argued at all levels that the Stafford board was not obligated to provide transportation to St. Edward School students on *those* days when Stafford public schools are closed. The parents repeatedly have contended that the Stafford board does have an obligation to provide transportation, regardless of whether Stafford public schools are open. The state board thus addressed an active controversy between the parties. We conclude that the trial court properly affirmed the state board's decision that the case was not moot.

We conclude that this case also meets the requirements of the "capable of repetition, yet evading review" exception to the mootness doctrine. "[F]or an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising

a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance." *Loisel* v. *Rowe,* 233 Conn. 370, 382, 660 A.2d 323 (1995).

Here, although the parents successfully obtained a temporary injunction requiring the Stafford board to provide transportation for all days except August 31, 1992, there was no time to do so for that date. Saint Edward School's request for transportation services for April 18, 19 and 20, 1994, was not denied by the Stafford board until March 16, 1994. One month was too short a time for the issues raised by the denial to have been fully litigated in the courts. Because the Stafford board contends that it is not obligated to provide such transportation in the future, this controversy is likely to arise again. Because one of the parents, Anthony Armelin, has children who still attend St. Edward School, he may be affected by the denial of transportation in the future, and the parents are reasonable surrogates for other parents who might be so affected in the future. Finally, children are required by law to attend school and whether they have transportation is a matter of public importance. See *Snyder* v. *Newtown,* 147 Conn. 374, 161 A.2d 770, appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1960). For these reasons, we conclude that this case meets the requirements of the "capable of repetition, yet evading review" exception to the mootness doctrine.

B

We next turn to the question of whether, because the Stafford board found that the case was moot, the state

board was limited to reviewing only the mootness decision, and thus was precluded from addressing the merits. We conclude that the state board properly ruled on the merits of the case.

The Stafford board argues that the state board, as an administrative agency conducting an appellate review, was limited to reviewing only the matters in the record and the questions specifically ruled upon by the Stafford board, the initial administrative fact finder. The Stafford board argues that because it found that the case was moot and therefore had failed to rule on the merits, the state board also could rule only on the question of mootness.

The question presented to both the Stafford board and the state board was whether St. Edward School students were entitled to transportation on those days when the Stafford public schools were not in session. The state board was correct in ruling on the merits, even though the Stafford board failed to do so, because § 10-186 empowers the state board to hear appeals de novo. *Waterford* v. *State Board of Education*, 148 Conn. 238, 248, 169 A.2d 891 (1961) ("The defendant [state board] was not confined to a consideration of the transcript of the hearing before the local board. Section 10-186 authorizes . . . the defendant to conduct a hearing de novo, examine witnesses, and develop facts in addition to those which were before the local board.").

II

The Stafford board next argues that: (1) the state board's decision constituted a declaratory ruling; (2) the statutory requirements for obtaining a declaratory ruling were not met; and (3) the state board lacked the authority to issue such a ruling. We conclude that the state board decision resolved a contested case, and was not merely a declaratory ruling.

A declaratory ruling is a "ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." General Statutes § 4-176 (a). A contested case, on the other hand, is "a proceeding . . . in which legal rights, duties, or privileges of a party are required by statute to be determined by an agency after an opportunity for a hearing or in which a hearing is in fact held. . . ." General Statutes § 4-166 (2). Three criteria are considered in determining contested case status: "(1) whether a legal right, duty or privilege is at issue, (2) [which] is statutorily required to be determined by [an] agency, (3) through an opportunity for a hearing . . . ." (Internal quotation marks omitted.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 800–801, 629 A.2d 367 (1993); *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984). Here, § 10-186 required that the transportation rights of St. Edward School students be determined by the state board, after an opportunity for a hearing. The state board's decision regarding the rights of the parties, therefore, was a final decision in a contested case, not a declaratory ruling.

III

We now reach the principal issue on appeal: the proper construction of the phrase "same kind of transportation services" in § 10-281. See footnote 2 of this opinion. The Stafford board contends that this phrase limits its obligation to provide bus services on those days when only the public schools are in session. We disagree.

We begin with basic principles of statutory construction. When interpreting statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that

intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Gonsalves* v. *West Haven*, 232 Conn. 17, 21, 653 A.2d 156 (1995).

We conclude that the "same kind of transportation services" means that the children attending nonpublic schools will ride to and from school under the same safe and reliable conditions as students transported to public schools. It does not mean that they shall be transported on days when only the public schools are in session. Though this seems clear from the language of the legislation itself, further support is garnered from the legislative history.

The present version of § 10-281 was introduced in 1971 by Senator Romeo G. Petroni. He commented at the time: "This is a bill that will equalize the problem that confronts many school systems in the state. It's basically a question of getting all the children to school by public transportation. The bill deals with the safety of the young people whether they go to a public or private school." 14 S. Proc., Pt. 6, 1971 Sess., p. 2780. Further, Senator Lawrence DeNardis remarked: "I think the parents have a right to all the supportive services necessary for their children to attain an education, whether it be in private or public schools." Id., p. 2783. In the House of Representatives debate, Representative Lucien DiMeo endorsed the bill as follows: "I believe that the advantages of education and the advantages that the state provide[s] whether it is in busing or other assistance, *should be uniform*. . . . What I am speaking for is uniformity and education . . . . I believe that the children that do attend private schools do have a right to be bused the same as the children in the rest of

the school system within that community." (Emphasis added.) 14 H.R. Proc., Pt. 13, 1971 Sess., p. 5664.

This history reveals that the purpose behind this statute is: (1) to ensure the safety of children traveling to and from school; and (2) to provide equal transportation services to students, regardless of whether they attend private or public schools. See *Snyder* v. *Newtown*, supra, 147 Conn. 391.

If a statute can be construed in several ways, we will adopt the construction that is most reasonable. *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991). To provide transportation for private school students on days when only the public schools are in session does not reasonably meet either of the statute's objectives. It is not reasonable to assume the legislature was concerned with children's safety only on the days that both public and private schools were in session. It also is not reasonable to conclude that providing bus service to public school students for 180 days and to private school students for less is "equal" or "uniform." Reasonable equality would also limit the town's transportation obligation to no more than the 180 days mandated by law.

We also note that the legislature sought to protect school districts from incurring excessive costs in transporting nonpublic school students. Section 10-281 provides in relevant part: "In no case shall a . . . school district be required to expend for transportation to any nonpublic school, in any one school year, a per pupil transportation expenditure greater than an amount double the local per pupil expenditure for public school transportation . . . ." As the trial court properly found, "[t]he implication of the limitation is that the obligation is not in all aspects coextensive with the public school schedule." *Board of Education* v. *State Board of Education*, Superior Court, judicial district of Tolland, Docket

No. TTDCV950057771S (November 13, 1996). This reading of the term "same kind of transportation services" recognizes the inherent differences in transportation for public and private schools with respect to holiday, vacation or emergency recesses, location and teacher availability by contract.[5]

## IV

Finally, we address the Stafford board's argument that the state board's interpretation of § 10-281 violates the first amendment to the United States constitution[6] and article seventh of the Connecticut constitution.[7] The Stafford board asserts that this policy forces it, and therefore the taxpayers of the town of Stafford, to assist and subsidize St. Edward School, which is a religious school. Moreover, the Stafford board argues that this interpretation renders it dependent on a school schedule determined by the religious school, constituting a constitutionally impermissible entanglement. We are not persuaded.

The first amendment prohibits the excessive entanglement of government and religion. In order for a statute to conform to this mandate, it "must have a secular legislative purpose; second, its principal or primary

---

[5] We share Justice Berdon's concern about the cost of school transportation to nonpublic schools. In this respect we have made clear that equality for public school transportation is that which is reasonable in kind and duration to ensure safe and reliable transportation. We also note, as Justice Powell did, that the parents of nonpublic school students support institutions "which afford wholesome competition with our public schools" and "relieve substantially the tax burden incident to the operation of public schools." *Wolman* v. *Walter*, 433 U.S. 229, 262, 97 S. Ct. 2593, 53 L. Ed. 2d 714 (1977) (Powell, J., concurring in part and dissenting in part).

[6] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

[7] Article seventh of the Connecticut constitution provides in relevant part: "No preference shall be given by law to any religious society or denomination in the state. . . ."

effect must be one that neither advances nor inhibits religion . . . [and; third] the statute must not foster an excessive government entanglement with religion." (Internal quotation marks omitted.) *Lemon* v. *Kurtzman*, 403 U.S. 602, 612–13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). The United States Supreme Court has upheld a New Jersey statute providing for direct reimbursements for the transportation costs incurred by parents of children attending a private, religious school; *Everson* v. *Board of Education*, 330 U.S. 1, 18, 67 S. Ct. 504, 91 L. Ed. 711 (1947); and a Minnesota statute permitting such parents to take tax deductions for certain educational expenses, including transportation to private schools. *Mueller* v. *Allen*, 463 U.S. 388, 403, 103 S. Ct. 3062, 77 L. Ed. 2d 721 (1983).

In determining that the New Jersey legislation did not violate the establishment clause of the first amendment to the United States constitution, the United States Supreme Court focused on the relevant statute's secular purpose: the "legislation, as applied, does no more than provide a general program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools." *Everson* v. *Board of Education*, supra, 330 U.S. 18. In *Mueller* v. *Allen*, supra, 463 U.S. 397, the fact that the tax deduction was available for parents of all children attending both private and public schools supported the conclusion that the law did not " 'confer any imprimatur of state approval.' " Further indicators of the law's secular purpose and effect were that benefits were provided to a large spectrum of people; id.; and the benefits were given to the individual parents, rather than directly to the schools. Id., 399. Furthermore, the court concluded that the legislation did not "excessively entangle the State in religion" in part because the legislation did not require "comprehensive, discriminating, and continuing

state surveillance." (Internal quotation marks omitted.) Id., 403.

Applying these standards, we conclude that the state board's interpretation of § 10-281 does not violate the establishment clause. First, the secular purpose of § 10-281 is to provide safe and dependable transportation to all school children. The bright yellow school bus with its flashing red lights is a symbol of safe and reliable transportation.[8] It represents no more state involvement on behalf of its passengers than that of the ambulance, police and fire services offered to all schools, religious or secular, private or public. Second, § 10-281 does not advance or inhibit religion because its transportation provision directly helps the parents and students of St. Edward School, as well as the parents and students of any other private, nonprofit school, rather than the school itself. Third, § 10-281 does not foster excessive government entanglement in religion. Merely because the schools may attempt to coordinate their school calendars does not constitute "comprehensive, discriminating, and continuing state surveillance." (Internal quotation marks omitted.) *Mueller* v. *Allen,* supra, 463 U.S. 403, citing *Lemon* v. *Kurtzman,* supra, 403 U.S. 619. In this case we have no continuing cash subsidies or any situation[9] creating "an intimate and continuing relationship between church and state." *Lemon* v. *Kurtzman,* supra, 622.

The Stafford board also cannot prevail under the Connecticut constitution. The first amendment to the United States constitution and article seventh of the

[8] Our statutes prohibit passing a standing school bus displaying flashing red signal lights. General Statutes § 14-279.

[9] As the United States Supreme Court pointed out in *Lemon* v. *Kurtzman,* supra, 403 U.S. 621, "[t]he history of government grants of a continuing cash subsidy indicates that such programs have almost always been accomplished by varying measures of control and surveillance."

Connecticut constitution serve similar purposes. *Griswold Inn, Inc.* v. *State,* 183 Conn. 552, 558–59, 441 A.2d 116 (1981). This court already has held that a prior version of § 10-281, which provided that school districts may provide such transportation services,[10] did not violate article seventh of our 1955 constitution.[11] *Snyder* v. *Newtown,* supra, 147 Conn. 391. Although article seventh was amended in 1965, the court made clear in *Snyder* that article seventh of the 1955 constitution prohibits laws which " 'aid one religion, aid all religions, or prefer one religion over another.' " Id., 390.[12] We concluded that § 10-281 "primarily serves the public health, safety and welfare and fosters education. In the light of our history and policy, it cannot be said to compel support of any church. It therefore does not come within the proscription of article seventh." Id., 391. Requiring the Stafford board to provide transportation on days when the public schools are closed serves the vital health, safety and welfare of all students and fosters education. Accordingly, we reject the Stafford board's claim that the state board's interpretation of § 10-281 violates the Connecticut constitution.

[10] At the time *Snyder* was decided, § 10-281 provided in relevant part: "Any . . . school district may provide, for its children attending private schools therein . . . any transportation services provided for its children attending public schools. . . ." This discretionary, rather than mandatory, language, however, does not affect our analysis. The primary purpose of the law remains the same: "It aids the parents in sending their children to a school of their choice, as is their right. It protects the children from the dangers of modern traffic and reduces the hazard of contracting illness in bad weather. . . . It primarily serves the public health . . . ." *Snyder* v. *Newtown,* supra, 147 Conn. 391.

[11] Article seventh, § 1, of the Connecticut constitution of 1955 provided in relevant part: "And each and every society or denomination of Christians in this state, shall have and enjoy the same and equal powers, rights and privileges . . . ."

[12] The prohibition of such a preference is set forth explicitly for the first time in article seventh of the 1965 constitution. See footnote 7. The 1965 change "shows a greater awareness of religious freedom, and of the separation of church and state." *Griswold Inn, Inc.* v. *State,* supra, 183 Conn. 559 n.2.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and PALMER, J., concurred.

BORDEN, J., concurring. I agree fully with the majority opinion. I write separately only to emphasize several points that are implicit in that opinion.

First, General Statutes § 10-281 must be read in light of two overarching principles that it embodies: (1) a general principle of equality between public and private school students regarding transportation; and (2) a general principle of safety for those students. These two principles are evident from both the language and the legislative history of the statute. See, e.g., 14 S. Proc., Pt. 6, 1971 Sess., pp. 2780–83, remarks of Senators Romeo G. Petroni, Lawrence J. DeNardis and Thomas P. Mondani; 14 H.R. Proc., Pt. 13, 1971 Sess., pp. 5661–62, 5664–65, remarks of Representatives Thomas J. McNellis, Lucien A. DiMeo and E. Ronald Bard.

Second, the statute, and the two principles that it embodies, are animated by an overall rule of reason. That is, the statute requires reasonable equality, as opposed to strict or literal equality, between public and private school students regarding transportation, and a reasonable degree of safety for them. This rule of reason is implied by the statute's legislative history, and is consistent with the only other case that we have decided under analogous statutes, namely, *Waterford* v. *State Board of Education*, 148 Conn. 238, 243, 169 A.2d 891 (1961).

Third, the parents in the present case send their children to the St. Edward School in satisfaction of the statutory mandate for education of their children. See General Statutes §§ 10-184 and 10-188.[1] That mandate

---

[1] General Statutes § 10-184 provides: "Duties of parents. All parents and those who have the care of children shall bring them up in some lawful and

requires 180 days of school per year. See General Statutes § 10-16.[2] Therefore, any claim under § 10-281 for public transportation on days that the public schools are closed must be limited to a 180 day school year.

The parents' claim for transportation on the four days in question here, and for similar days in the future, is valid in light of these three points. Requiring the town to transport private school students on limited days on

honest employment and instruct them or cause them to be instructed in reading, writing, spelling, English grammar, geography, arithmetic and United States history and in citizenship, including a study of the town, state and federal governments. Each parent or other person having control of a child seven years of age and over and under sixteen years of age shall cause such child to attend a public day school regularly during the hours and terms the public school in the district wherein such child resides is in session, or while the school is in session in which provision for the instruction of such child is made according to law, unless the parent or person having control of such child is able to show that the child is elsewhere receiving equivalent instruction in the studies taught in the public schools."

General Statutes § 10-188 provides: "Private schools and instruction. Attendance of children at a school other than a public school shall not be regarded as compliance with the laws of the state requiring parents and other persons having control of children to cause them to attend school, unless the teachers or persons having control of such school file with the Commissioner of Education student attendance reports at such times and in such forms as the commissioner prescribes, and make such reports and returns concerning the school under their charge to the Commissioner of Education as are required from boards of education concerning the public schools, except that no report concerning finances shall be required. The Commissioner of Education shall furnish to the teachers or persons having charge of any school such forms as may be necessary for compliance with the provisions of this section."

[2] General Statutes § 10-16 provides: "Length of school year. Each school district shall provide in each school year no less than one hundred and eighty days of actual school sessions for grades kindergarten to twelve, inclusive, nine hundred hours of actual school work for grades one to twelve, inclusive, and four hundred and fifty hours of kindergarten, provided school districts shall not count more than seven hours of actual school work in any school day towards the total required for the school year. If weather conditions result in an early dismissal or a delayed opening of school, a school district which maintains separate morning and afternoon kindergarten sessions may provide either a morning or afternoon kindergarten session on such day."

which the public schools are closed is a reasonable accommodation of the private school students' entitlement to a reasonable degree of safety; it meets their entitlement to a reasonable degree of equality; and it is within the limits of the 180 day school year that our statutes permit parents to satisfy by sending their children to private schools.

I also agree with the majority's rejection of the town's constitutional claim. Having concluded that § 10-281 requires the town to supply transportation to private school students on a limited number of days on which the public schools are closed, I agree that this additional obligation of transportation does not violate either the federal or state constitution.

BERDON, J., dissenting. This case raises very thorny and difficult questions concerning article seventh of the constitution of Connecticut that forbids the state from giving preference "by law to any religious society or denomination in the state" with respect to what transportation the plaintiff, the board of education of the town of Stafford (school board), is required to furnish at taxpayers' expense to a religious school.

The majority, however, purposefully reaches out to decide the issues in this case even though they are moot; that is, the days that transportation was not provided have long since passed and no practical relief can be granted by this court.[1] "It is a well-settled general rule that the existence of an actual controversy is an

---

[1] Indeed, at no time during which the litigation has been pending—either before the school board, during the administrative hearing before the defendant state board of education, or during the appeal before this court—has this been a live controversy. The complaining party did not file the request for a hearing until September 30, 1994, six and one-half months after the school board had denied the transportation request, five and one-half months after the days for which transportation had been requested, and three months after the close of the academic year.

essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 230, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 388 (1997).

Moreover, I disagree with the majority's conclusion that this appeal falls within the doctrine that an otherwise moot case is justiciable if it presents an issue of public importance that is capable of repetition but likely to evade review. *Loisel* v. *Rowe*, 233 Conn. 370, 382–88, 660 A.2d 323 (1995). The majority concludes that this case meets the first prong of the *Loisel* test because "[o]ne month was too short a time for the issues raised by the denial [of transportation] to have been fully litigated in the courts." First, I am unaware of any argument in the briefs or any evidence in the record that the school board's decision not to transport nonpublic school students on certain days is "strongly likely to become moot in the *substantial majority of cases* in which it arises . . . ." (Emphasis added.) *Loisel* v. *Rowe*, supra, 384. Consequently, the "urgency of deciding [this case] is significantly reduced." Id. Second, the record in this case belies that claim. The parents who initiated the complaint in this case, Anthony Armelin and Lynda Schold (parents), together with all the other parents, were notified on January 26, 1993, when the school board provided St. Edward School with the public school calendar for the 1993–94 school year, that April 18, 19 and 20, 1994, would be vacation days for the school system and that transportation would not be provided on those days. Subsequently, because of

cancellations due to inclement weather, sometime prior to March 14, 1994, St. Edward School rescheduled three additional school days on April 18, 19 and 20. On March 14, 1994, the superintendent of schools for the Norwich diocese (the diocese that includes St. Edward School) and the parents were put on notice that no transportation would be provided when the superintendent's request for such transportation was denied by the school board.

Notwithstanding the fact that the timely notice allowed the parents to appeal, at least, to the school board, if not further, before April 18, 1994, the parents took no action until September 30, 1994, more than five months after the days in question. Furthermore, the school board's contention that it is not obligated pursuant to General Statutes § 10-281 to provide transportation to St. Edward School students when public schools are closed does not make it likely that it will deny such transportation in the future. Indeed, since the 1984–85 school year through September 19, 1996—a period including approximately 2174 school days—there had been only one other day on which transportation was not furnished to St. Edward School students. Accordingly, this case does not come within the exception to the mootness doctrine for issues of public importance that are capable of repetition but likely to evade review. Id., 370.[2]

Because the majority reaches the constitutional issues in this case, and because I find fault in its state constitutional analysis and its reliance on *Snyder* v.

---

[2] The parents, through this action, sought declaratory relief that the defendant state board of education had no jurisdiction to determine under General Statutes § 10-186. The state board's authority under § 10-186 was limited to providing relief for the denial of transportation on the three specific days in April, 1994. Since the three days on which transportation was not provided had long since passed, the state board could not order the school board to render transportation services for those days.

*Newtown,* 147 Conn. 374, 390–91, 161 A.2d 770 (1960), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961), I am compelled to comment on these issues. This court has come a long way since 1960 when *Snyder* was decided in recognizing that our state constitution has independent vitality and that it requires an independent analysis of several factors to determine the contours of its provisions. In *State* v. *Geisler,* 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we enumerated the following six factors to consider when construing the contours of our state constitution: (1) the textual approach; (2) holdings and dicta of this court, and the Appellate Court; (3) federal precedent; (4) the sibling approach; (5) the historical approach; and (6) economic/sociological considerations.

The majority opinion incorrectly relies on *Snyder* v. *Newtown,* supra, 147 Conn. 374, which, not only provides an incomplete independent analysis of article seventh of our state constitution, but also, interprets a superseded state constitution. The *Snyder* decision, which held that payment by a town for transportation of schoolchildren to a religious school did not constitute support of the school within the proscription of article seventh of the constitution of the state of Connecticut, was based on the 1955 version of article seventh.[3] This

---

[3] Article seventh, § 1, of the Connecticut constitution of 1955 provided: "It being the duty of all men to worship the Supreme Being, the Great Creator and Preserver of the Universe, and their right to render that worship, in the mode most consistent with the dictates of their consciences; no person shall by law be compelled to join or support, nor be classed with, or associated to, any congregation, church or religious association. But every person now belonging to such congregation, church, or religious association shall remain a member thereof until he shall have separated himself therefrom, in the manner hereinafter provided. And each and every society or denomination of Christians in this state, shall have and enjoy the same and equal powers, rights and privileges; and shall have power and authority to support and maintain the ministers or teachers of their respective denominations, and to build and repair houses for public worship, by a tax on the members of any such society only, to be laid by a major vote

state subsequently adopted the 1965 constitution, which includes a revised article seventh on establishment of religion.

Article seventh of the Connecticut constitution of 1965 provides: "It being the right of all men to worship the Supreme Being, the Great Creator and Preserver of the Universe, and to render that worship in a mode consistent with the dictates of their consciences, no person shall by law be compelled to join or *support*, nor be classed or associated with, any congregation, church or religious association. No preference shall be given by law to any religious society or denomination in the state. Each shall have and enjoy the same and equal powers, rights and privileges, and may support and maintain the ministers or teachers of its society or denomination, and may build and repair houses for public worship." (Emphasis added.) There are significant differences between the 1955 and 1965 constitutions. For example, the 1965 constitution not only removes all references to Christian denominations, but, more importantly, guarantees that "[n]o preference shall be given by law to any religious society or denomination in the state." This court concluded in *Griswold Inn, Inc.* v. *State*, 183 Conn. 552, 559 n.2, 441 A.2d 116 (1981), that the 1955 constitutional provision did not show as great an "awareness of religious freedom, and of the separation of church and state" as the 1965 version of article seventh.

Furthermore, *Snyder* ignores the textual differences between article seventh of our state constitution and the first amendment to the United States constitution. This court correctly pointed out in *Griswold Inn, Inc.* v. *State*, supra, 183 Conn. 559 n.3, that even though the first amendment to the United States constitution and

of the legal voters assembled at any society meeting, warned and held according to law, or in any other manner."

article seventh of our state constitution serve a similar purpose, "[t]he state provision is . . . more comprehensive than the federal provision." The court further noted that "[a]rticle seventh's language even more than the federal provision condemns any law which gives 'preference' to one religious society and assures that no person 'shall . . . be compelled to . . . support . . . or be associated with' any religious group but can 'worship in a mode consistent with the dictates of their consciences.' " Id. Therefore, if *Snyder* was relevant, it ignored the fact that the language used by the framers of article seventh demonstrates their intent to more positively enunciate this separation between church and state than did the framers of the first amendment prohibition of laws "respecting an establishment of religion . . . ." U.S. Const., amend. I.

Finally, I disagree with the majority's conclusion that because the primary purpose of § 10-281 is to protect the welfare and safety of children who must use the highways in attending school in accordance with the mandatory schooling law, that necessarily makes it a permissible form of support under the provision of article seventh. Indeed, Justice Samuel Mellitz cogently pointed out in dissent in *Snyder* with respect to the 1955 constitution, "[t]he law leaves to every man the right to entertain such religious views as appeal to his individual conscience and to provide for the religious instruction and training of his own children to the extent and in the manner he deems essential or desirable. When he chooses to seek for them educational facilities which combine secular and religious instruction, he is faced with the necessity of assuming the financial burden which that choice entails." *Snyder* v. *Newtown*, supra, 147 Conn. 396. Thus, "all compulsory support is proscribed [by article seventh], and the only questions to be resolved are whether the expenditure involved

constitutes 'support' and, if it does, whether the beneficiary of the support is a 'congregation, church or religious association' within the meaning of article seventh . . . ." Id., 395 (*Mellitz, J.*, dissenting).

Justice Mellitz concluded in his dissent that General Statutes (Rev. to 1958) § 10-281 was unconstitutional because "where transportation is required to enable a child to attend [religious] school, it is an integral part of the operation of the school, and that payment of the expense of transportation is an expenditure in *support of the [religious] school.*" (Emphasis added.) Id.; see *Matthews* v. *Quinton*, 362 P.2d 932, 940–41 (Alaska 1961) (transportation of children to nonpublic schools on public school buses is direct benefit to school as well as to child); *Visser* v. *Nooksack Valley School District No. 506*, 33 Wash. 2d 699, 708, 207 P.2d 198 (1949) ("[t]ransportation to . . . school differs, in both degree and nature, from those indirect, incipient, and incidental benefits which accrue to schools, as buildings, or to its pupils, as citizens under normal health, welfare, and safety laws of the state"); *State* v. *Nusbaum*, 17 Wis. 2d 148, 157, 115 N.W.2d 761 (1962)[4] (financial benefit that parochial schools receive from state provided transportation is distinguishable from provision of fire, police, water and sewer services, "whereby no classification is made as to religious" status). In this case, it cannot be denied that public transportation for all nonpublic schools is a benefit to St. Edward School as well as its students, and that such a benefit "supports" the school and its religious mission.

As can be seen from this preceding discussion, the issue of the constitutionality of the provision of transportation for students who attend religious schools is

---

[4] *Nusbaum* was subsequently overruled by a 1967 constitutional amendment permitting state funded transportation of private schoolchildren. See *Cartwright* v. *Sharpe*, 40 Wis. 2d 494, 501, 162 N.W.2d 5 (1969).

not quite as simplistic as the majority makes it out to be. The complex nature of the constitutional issue counsels us to address it in a case that presents a live controversy and not in a case in which the issues are moot.

The implication of the majority's opinion not only raises serious constitutional questions, but could be financially devastating for the town of Stafford and all the other public school districts in Connecticut. As I interpret the majority opinion, the school board is required to provide transportation to the students attending nonpublic schools on any day, regardless of whether the public schools are in session, provided that it does not exceed the 180 days mandated by law, that it is not unreasonable in kind and duration,[5] and that it does not cost more than "double the local per pupil expenditure for public school transportation . . . ."[6] General Statutes § 10-281. It is inappropriate to decide such a broad based issue on the record of a case such as this.

I would, therefore, dismiss the case as being moot.

---

[5] See footnote 5 of the majority opinion.

[6] General Statutes § 10-281 provides in relevant part: "In no case shall a municipality or school district be required to expend for transportation to any nonpublic school, in any one school year, a per pupil transportation expenditure greater than an amount double the local per pupil expenditure for public school transportation during the last completed school year. . . ."